RANDOLPH A. ROGERS *vs.* BOSTON AND MAINE RAILROAD.

Essex.    November 3, 1904. — January 5, 1905.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Negligence,* Contributory.

An employee of a coal company, driving a pair of horses in an empty tip cart on his way for a load of coal on a private road used by the coal company's agents, servants and customers, about to cross the tracks of a railroad company at a crossing which he considers dangerous, knowing that a train may come along at any moment and that there is no gate or flagman there, his view in one direction being obstructed by a lumber shed and by a car on a spur track and his empty cart making considerable noise on the frozen ground although going slowly, is not in the exercise of due care if he drives upon the track and is struck by a train without first stopping to ascertain whether he can cross with safety.

TORT for personal injuries from being run down by a train of the defendant while crossing the tracks of the defendant's railroad in that part of Haverhill formerly called Bradford. Writ dated March 4, 1902.

In the Superior Court *De Courcy,* J., at the close of the plaintiff's evidence, ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*W. S. Peters & H. J. Cole,* for the plaintiff.

*H. F. Hurlburt & D. E. Hall,* for the defendant.

LATHROP, J.    Taking the evidence most favorably for the plaintiff, the following facts appear. The defendant had three tracks at the place of the accident. One of them was its main track, and on each side of this was a spur track put in for the benefit of a coal and lumber company, which occupied the land on each side of the tracks. The spaces between the tracks were planked in accordance with an agreement made by the predecessor in title of the defendant, and the planking was maintained for the benefit of the coal and lumber company. The tracks ran in an easterly and westerly direction. On the north of the land of the company was the Merrimack River. The way in question crossed the tracks at nearly a right angle, and was used by the company to obtain access to its coal sheds.

The plaintiff was twenty-nine years old and had been in the

employ of the coal and lumber company for three months.   He was familiar with the surroundings.   He knew that passenger trains and freight trains passed on the main track, and that a train might come along at any moment.   He knew, also, that there was no gate or flagman at the crossing, and testified that it was a dangerous crossing; and he knew that he was taking some chances in using it.

To one approaching the tracks from the south, as the plaintiff was doing just before the accident, the view towards the west was obstructed by a lumber shed and by a car on the southerly spur track near the crossing.   The plaintiff was on an empty tip cart drawn by two horses, and was on his way to the coal sheds on the northerly side of the tracks, to get a load of coal. He testified that as he approached the crossing his horses were walking at a pretty good gait, but as he got nearer he pulled up his horses a little, so that they were walking about a mile an hour, and when his horses' heads were about at the southerly corner of the lumber sheds he pulled up his cap, which had been drawn over his ears, listened and looked, but heard and saw nothing; that he kept looking but could not see anything until he got upon the track where he was struck.   He also testified that unless there was some noise in the yard to drown the sound of trains one could hear them; that on that morning the ground was frozen, and his empty cart made considerable noise as he went along; and that there was noise also in the yard.

The only evidence as to the speed of the train came from a witness for the plaintiff, who, on direct examination, testified that the train, which consisted of a flat car loaded with lumber, pushed by a locomotive engine, was going at the rate of thirty miles an hour; but who, on cross-examination, testified that he " was entirely wrong when he estimated the speed of the train at thirty miles an hour "; that the train was going three or four times as fast as the plaintiff, and at its usual rate at that place. The accident occurred about a quarter to ten o'clock in the morning of a pleasant day in January, 1902.

On this evidence, we are of opinion that the ruling was right. This was not a highway, town way or travelled place, where a railway corporation is required to cause a bell to be rung or a whistle to be sounded, under the R. L. c. 111, §§ 188–192.   It

was a private way, restricted to the use of the coal and lumber company, its agents and servants, and its customers.

In the next place we are of opinion that the plaintiff was not in the exercise of due care. The general rule in this Commonwealth is that, as a railroad crossing is a dangerous place, a traveller on the highway is bound to make a reasonable use of his sense of sight as well as of hearing, in order to ascertain whether he will expose himself to danger; that if he fails to use his senses without reasonable excuse, he fails to use reasonable care; and that the burden is on the plaintiff to show such care, even though the defendant is in fault. *Chase* v. *Maine Central Railroad*, 167 Mass. 383, 387, and cases cited. So, also, it is the general rule that if there is anything to obstruct the view of a traveller on the highway at a crossing at grade, it is his duty to stop until he can ascertain whether he can cross with safety. *Chase* v. *Maine Central Railroad*, 167 Mass. 383, 388. *Fletcher* v. *Fitchburg Railroad*, 149 Mass. 127, 133. *Donnelly* v. *Boston & Maine Railroad*, 151 Mass. 210. *Debbins* v. *Old Colony Railroad*, 154 Mass. 402.

We see nothing in the case before us to take it out of the general rule. The plaintiff certainly had no greater rights than a traveller on the highway. While there is evidence that he looked and listened, neither was of any avail. His view was obstructed, and the noise of his cart prevented his hearing the approaching train, and this he knew. It was his duty then to stop and listen. If he had done this, there can be no doubt that he would have heard the approaching train. He took his chances, and must abide the consequences.

*Exceptions overruled.*