BERTHA M. HAMBLIN, administratrix, *vs.* NEW YORK, NEW-HAVEN, AND HARTFORD RAILROAD COMPANY.

Bristol.    March 26, 27, 1907. — May 15, 1907.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Negligence. Railroad.*

In an action against a railroad company by an administratrix for causing the death of the plaintiff's intestate at a grade crossing of a highway, the jury found that the defendant gave the signals required by law, and the presiding judge refused to allow the plaintiff to go to the jury on the other counts of her declaration which required the proof of due care on the part of the plaintiff's intestate. It appeared that the plaintiff's intestate, with a boy by his side, was driving in a closed low milk wagon with glass windows at the ends and sides and a sliding door on each side, the front being shut from the horse "with just a place through for the reins," that the accident occurred before daylight on a dark and foggy morning, that there were no gates at the crossing but a flagman was stationed there day and night, that the intestate was familiar with the crossing and knew that a regular train was due at about the time of the accident, that as they approached the crossing they looked down the tracks toward the station from which the train was about due and saw a light, which both thought was at the station, that they did not see the flagman or hear any bell, whistle or other warning, that the horse was going at a walk and after seeing the light walked "a little bit faster" to get across the tracks, that when the wagon was on the second track the horse, which had cleared the tracks, stopped and reared, and "began teetering up and down . . . while you could count seven," that when the horse stopped they looked down the track and saw the light of the approaching train, that the intestate "yelled out for the horse to go ahead," that the whip was on the outside of the wagon and the intestate tried to open the sliding door to get it, but the blanket caught behind the door and he could open it only far enough to get his hand out as far as the wrist and could not reach the whip, that the flagman "yelled to go ahead," and then the train struck them. *Held,* that, even if the plaintiff's intestate was not negligent in proceeding at an ordinary pace across the rails after having seen through the darkness a light on the track from which a train was about due, which he then thought was a station light, without pausing to assure himself that it was not a headlight, yet with the additional facts of his neglect to listen in such a way as to be likely to hear anything outside his wagon, his failure to have in ready control the ordinary implements of driving, his suffering the door of the wagon to become clogged by the blanket so that it would not slide, and his walking his horse across a double tracked railroad at about train time, there was no evidence for the jury that the plaintiff was in the exercise of due care, and the ruling of the judge was right.

RUGG, J.    This is an action of tort to recover damages for the death of John H. Hamblin, which occurred at a highway grade

crossing with the tracks of the defendant. The deceased was driving a low milk wagon, enclosed with glass windows on the ends and sides and a sliding door on each side.* He was familiar with the crossing, and knew that a regular train was due at about the time of the accident. The view of the tracks in either direction to the traveller approaching was somewhat obstructed, until within about thirty-five feet of the tracks, whence to the rails there was an unobstructed view of one and three-quarters miles toward Attleborough station, from which direction the train came which killed the intestate. There were no gates at the crossing, but a flagman was stationed there day and night. The morning was dark and foggy, and it was not daylight at the time of the accident. In the wagon with the deceased was a boy, who described the circumstances attending the accident, in substance, as follows: As they approached the crossing, the horse going at a walk, they looked down the tracks toward the Attleborough station, and saw a light which both thought was at the station. They did not see the flagman, nor did they hear any bell, whistle or warning. After seeing the light, the horse did not jog along, but walked a little bit faster, to get across the track. When the wagon was on the second track, the horse, which had just cleared the tracks, stopped and reared up, and "began teetering up and down . . . while you could count seven." When the horse stopped they looked down the track, and saw the light of the approaching train. The whip was on the outside of the wagon. Hamblin "yelled out for the horse to go ahead" and tried to open the door (which slid on rollers), but the blanket caught behind the door, and he could only open it far enough to get his hand out about as far as his wrist, and could not reach the whip. Then the flagman came out and " yelled to go ahead." Then the train struck them. The case was sent to the jury on the fifth count of the declaration, which was under R. L. c. 111, § 268, for failure to give the statutory signals, and a verdict was returned for the defendant. The court directed a verdict for the defendant upon four other counts, all of which necessarily alleged and required proof of due care on the part of

---

* " The wagon was shut up between them and the horse, with just a place through for the reins."

the plaintiff's intestate.   The case comes up on her exceptions to this direction.

The view of the facts most favorable to the plaintiff's contention falls short of sustaining the burden of showing due care on the part of the deceased.   A grade crossing of a highway with a steam railroad is universally recognized as a place of extreme danger, where the traveller's attention must be intelligently and actively directed to looking out for his own safety.   He cannot alone rely upon the railroad and its employees to do their duty, but must actually exercise his own faculties of sight and hearing and common sense to care for himself.   The deceased, who was driving, approached the crossing with his horse at a walk.   He observed a light a mile or more down the track, which in the dimness of fog and darkness he thought was at a station, but though then in a position of safety he did not pause to further investigate.   Nor did he open the door or window of his closed milk wagon, a vehicle itself likely to produce considerable noise, to listen for the usual crossing signal and the rumble of an approaching train.   Without urging his horse out of a walk, he started across the tracks.   He was boxed up in a wagon, so that he could not use the persuasion of his voice with its usual force and effect to hurry his horse, and he could only use his whip, which was on the outside of the wagon, by opening the door. When danger was imminent, it was discovered that the blanket was so caught behind the door that it could not be opened far enough to afford any relief.   Nor is this a case where the circumstances are such as to excuse a traveller from exercising all his faculties.   It was a crossing where there does not appear to have been any other wagon at the time.   The atmospheric conditions were such that one could have heard at least with ordinary distinctness, and if there had been any reasonable effort to listen for signs of danger, there is nothing to show that it could not have been detected.   It was within the power of the deceased, in the exercise of common prudence, to look and listen in such a way that he could with reasonable certainty have been enabled to see or hear the approaching train if one was within the range of sight and hearing, which is the rule laid down in *Clark* v. *Boston & Maine Railroad*, 164 Mass. 434, 439.   There is much to be said in favor of the view that, where one in the

darkness sees a light down a railroad track, which he thinks at first sight is a station light, without pausing to assure himself that it is not a headlight, proceeds with deliberate pace across the rails, he is not using ordinary care; but here are the additional facts of a neglect to listen in such a way as to be likely to hear anything outside his wagon, a failure to have in ready control the ordinary implements of driving, a suffering of the door of the vehicle to become clogged with a blanket so it will not slide, and a walking of his horse across a double tracked railroad at about train time.   Whatever may be said as to the weight of any of these facts alone, taking them all together they are fatal to the plaintiff's right of recovery.   *Raymond* v. *New York, New Haven, & Hartford Railroad,* 182 Mass. 337.   *Walsh* v. *Boston & Maine Railroad,* 171 Mass. 52.   *O'Connor* v. *New York, New Haven, & Hartford Railroad,* 189 Mass. 361.

The cases relied upon by the plaintiff are all distinguishable. In *Hicks* v. *New York, New Haven, & Hartford Railroad,* 164 Mass. 424, there was evidence that the driver stopped and looked and listened before attempting to cross the tracks.   In *Tilton* v. *Boston & Albany Railroad,* 169 Mass. 253, two people were listening, the horse was under complete control, and the flagman although in sight made no motion of warning.   In *Clark* v. *Boston & Maine Railroad, supra,* and *Conaty* v. *New York, New Haven, & Hartford Railroad,* 164 Mass. 572, there were acts by the crossing tender conducing to mislead the traveller.   *Lamoureux* v. *New York, New Haven, & Hartford Railroad,* 169 Mass. 338, and *Brusseau* v. *New York, New Haven, & Hartford Railroad,* 187 Mass. 84, were suits where death was alleged to have resulted from failure to give the statutory signals, and where therefore the plaintiff was not obliged to prove due care; and gross negligence of the decedent was an affirmative defence to be proved by the defendant.   Upon a count for this cause in the present case the plaintiff was permitted to go to the jury.   The other cases upon which she relies are against street railway companies, where less evidence may sustain the burden of due care than upon railroad crossings.

*Exceptions overruled.*

*T. H. Buttimer,* (*W. G. Harrington* with him,) for the plaintiff. *J. L. Hall,* for the defendant.