Mary Lundergan, administratrix, *vs.* New York Central and Hudson River Railroad Company.

William Lundergan *vs.* Same.

Worcester.     October 5, 1909. — October 21, 1909.

Present: Knowlton, C. J., Hammond, Loring, Sheldon, & Rugg, JJ.

*Negligence,* Due care of plaintiff, Imputed negligence.

If one driving in a milk wagon before daylight in the morning is approaching a grade crossing of a railroad over a private way, where the corporation operating the railroad maintains gates and keeps a flagman, and, knowing that a train is due from the direction at his right hand, pulls his horse down almost to a

stop at a point about a rod and a half from the nearest of the tracks, and, having the crossing plainly in sight by means of electric lights near it, sees that the gates are open unattended, and, while his horse walks on slowly for a distance of from six to ten feet, puts his head out at the right hand side of the wagon and looks to see whether a train is coming and sees and hears none, but knows that his view to the right at this point is obstructed by a building and two piles of lumber and also knows that after passing a point within forty feet of the farther rail of the second track he will have an unobstructed view of the railroad to the right for so long a distance that he would see the headlight of an engine of an approaching train in time to avoid a collision, and if without looking again he proceeds and after crossing two tracks in safety is struck by a train on the third track coming from his right, he is negligent as matter of law.

One approaching a railroad grade crossing when a train is due, who looks for the train at a point where he knows that his view is obstructed and fails to look for it later where he knows that if the train is coming he can see it plainly, has looked carelessly.

If a boy in the employ of the proprietor of a milk route is sitting on the left hand side of a milk wagon of his employer, while the employer, who is driving, is sitting on the right hand side, and in approaching on a private way a grade crossing of a railroad the boy keeps a lookout only for trains approaching from the left while his employer is looking out only for trains approaching from the right, each trusting entirely to the other to look out for trains coming from his side, and if the wagon is struck on the crossing by a train coming from the right and the boy is killed in consequence of the failure of his employer to look to the right with due care, the negligence of the employer is a bar to an action for the death of the boy, who voluntarily surrendered to his employer all precautions against any danger coming from that side.

SHELDON, J.  1. The first of these cases is brought by the plaintiff as the administratrix of the estate of her minor son, William Lundergan, to recover damages for his death without conscious suffering. The death was caused by one of the defendant's trains running into a covered milk wagon, which contained one Rogers, a boy named St. Thomas, and the deceased, while the wagon was being driven by Rogers through Gardner Street in Worcester over a grade crossing of the defendant's railroad. At the trial the defendant conceded that the case should be submitted to the jury if there was evidence of due care on the part of Lundergan, the deceased, but contended that there was no such evidence. The judge * so ruled, and ordered a verdict for the defendant; and the case comes before us upon the plaintiff's exceptions to this ruling.

There was evidence that as the wagon approached the crossing Rogers sat upon its right hand side, driving; Lundergan sat

---

* *Bishop*, J.

upon the left hand side, and St. Thomas was between them. Rogers was running a milk route, and Lundergan and St. Thomas were in his employ, and had been for some months. Lundergan was sixteen years of age, strong, bright and active. He was well acquainted with the scene of the accident. Gardner Street was a private way, and was so designated by signs at its corners; there was no evidence that it was such a way as is described in St. 1906, c. 463, Part II. §§ 149, 150, and the railroad company had not posted the signs therein mentioned. But it had planked the crossing and might be found to have held it out as a fit place for public travel and so to have invited its proper use. It maintained gates on each side of the crossing, and kept a flagman, whose duty it was to raise and lower the gates and to flag the crossing when the gates were not in use.

The accident occurred at about five o'clock in the morning of February 3, 1908, when the sun had not risen and it was dark except for artificial light. But there were electric lights near the crossing, so that it could be distinctly seen. There were three tracks here, trains frequently passed, and the particular train which caused the accident was then about due.

As Rogers's wagon approached the crossing from the north, going at a slow trot, he pulled his horse down almost to a stop at a point about a rod and a half from the nearest of the defendant's tracks, and saw that the gates were up and lighted and that there was no flagman at the crossing. The wagon, though covered, had a glass front, glass sides and panels, and doors on each side. While the horse walked slowly on, for a distance of from six to ten feet, Rogers put his head out of the right hand side of the wagon, and looked to see whether a train was coming, but, as he testified, saw or heard none. Lundergan put out his head and looked in like manner from the left hand side of the wagon. They went on, and had crossed two tracks in safety, when they were struck by a train coming on the third track from the west, that is, upon Rogers's right hand side, and the accident happened. It appeared also that at the point where Rogers and Lundergan looked for trains, Rogers's view on his right was obstructed by a building and two piles of lumber on the westerly side of Gardner Street; but at any point within forty feet of the northerly rail of the second track there

was an unobstructed view of the railroad for so long a distance that if Rogers had looked within that space he would have seen the headlight of the engine of the approaching train and would have been able to avoid the collision ; and he knew that this was the fact. He was a witness for the plaintiff, and so testified on cross-examination. There was no evidence that Lundergan looked in that direction at all.

In this action, which does not come under the rule of St. 1906, c. 463, Part II. § 245, the plaintiff is bound to show that Lundergan was in the exercise of due care. *Coakley* v. *Boston & Maine Railroad*, 159 Mass. 32. *Walsh* v. *Boston & Maine Railroad*, 171 Mass. 52. *Rogers* v. *Boston & Maine Railroad*, 187 Mass. 217, 218.

If we were considering here an action brought by Rogers in his own behalf, we should be unable to say that a finding that he was in the exercise of due care would have been warranted. It is true that he saw that the gates were up ; and if, as might have been found, he did not know that they were temporarily out of use, he was justified in regarding this as a circumstance indicating that he might safely undertake to cross. If nothing more appeared, it undoubtedly would be for the jury to say to what extent he might rely upon this circumstance and how far, especially since he saw no flagman and his view to the right was much obstructed by intervening obstacles, he was bound, considering all the circumstances, to carry his own watchfulness. *Hicks* v. *New York, New Haven, & Hartford Railroad*, 164 Mass. 424. *Conaty* v. *New York, New Haven, & Hartford Railroad*, 164 Mass. 572. *Clark* v. *Boston & Maine Railroad*, 164 Mass. 434. *Robbins* v. *Fitchburg Railroad*, 161 Mass. 145. *Hanks* v. *Boston & Albany Railroad*, 147 Mass. 495. *Craig* v. *New York, New Haven, & Hartford Railroad*, 118 Mass. 431. But it is also true, as was indeed conceded by the counsel for the plaintiff in their able argument, that the fact of these gates being open and the flagman absent would not excuse him from exerting his senses actively for his own protection, but was simply a fact which he had the right to take into consideration in determining to what extent he ought to carry his own vigilance. *Merrigan* v. *Boston & Albany Railroad*, 154 Mass. 189. He was still bound to use his own senses and faculties to protect himself

from danger. *Santore* v. *New York Central & Hudson River Railroad, ante,* 437. *Slattery* v. *New York, New Haven, & Hartford Railroad, ante,* 453. *Tyler* v. *Old Colony Railroad,* 157 Mass. 336. *Ellis* v. *Boston & Maine Railroad,* 169 Mass. 600. *Roberts* v. *New York, New Haven, & Hartford Railroad,* 175 Mass. 296. *Briggs* v. *Boston & Maine Railroad,* 188 Mass. 463. *Romeo* v. *Boston & Maine Railroad,* 87 Maine, 540. This is especially true since the gates were not opened for him to cross, but were simply open and unattended. He recognized the duty that rested upon him and came nearly to a stop to look westerly and listen for a coming train before entering upon the crossing. But under the circumstances of this case that cannot avail him. A train was then due from the west; but although he looked in that direction he knew that from the point at which he looked his view was so obstructed and restricted that he could not command a sufficient range of vision to secure his safety. And he knew also that by looking along the tracks from a point nearer to the crossing he could see them for a distance sufficient to enable him to ascertain seasonably whether a train was approaching and whether he could cross with safety. But he entirely failed to take this precaution, which he must have known was essential to his safety, and nothing is shown to excuse this failure. His horse was gentle and fully under control; there was nothing to prevent his stopping at a proper place. Looking for a train at a place where he knew that he might not be able to see it cannot be enough when he knew that at another place he could see and observe whatever was necessary, and failed to make any effort to do so. After this ineffectual attempt to look, he drove on over the crossing, paying no attention to the imminent danger that actually existed, which he ought to have guarded against and which with proper care he might have avoided. This was negligence on his part. Though he looked for a train, yet he looked carelessly, because he looked only when he knew that his view was obstructed, and failed to look at the time and place at which, as he knew, he could have done so safely and would have had a clear and unrestricted field of vision. *Hamblin* v. *New York, New Haven, & Hartford Railroad,* 195 Mass. 555. *O'Connor* v. *New York, New Haven, & Hartford Railroad,* 189 Mass. 361. *Ellis* v. *Boston & Maine Railroad,* 169 Mass. 600. *Chase*

v. *Maine Central Railroad*, 167 Mass. 383.  *Winslow* v. *Boston &*
*Maine Railroad*, 165 Mass. 264.  *Fletcher* v. *Fitchburg Railroad*,
149 Mass. 127.  This is very much like those cases in which one
approaching a grade crossing when his view of the tracks is ob-
structed by some temporary obstacle, such as other cars or a
moving train, has contended that for that reason he was not
negligent in having failed to see the approaching train by which
he was hurt.  Such contentions, in the absence of other evi-
dence, have not been sustained.  *Fletcher* v. *Fitchburg Railroad*,
149 Mass. 127.  *Bancroft* v. *Boston & Worcester Railroad*, 97
Mass. 275.  *Donnelly* v. *Boston & Maine Railroad*, 151 Mass.
210.  *Hubbard* v. *Boston & Albany Railroad*, 162 Mass. 132,
134.  *Rogers* v. *Boston & Maine Railroad*, 187 Mass. 217.

As was said by Rugg, J. in *Hamblin* v. *New York, New Haven,*
*& Hartford Railroad*, 195 Mass. 555, 557, a case in some re-
spects resembling this, it was in the power of Rogers "in the
exercise of common prudence, to look and listen in such a way
[in this case at such a place] that he could with reasonable
certainty have been enabled to see or hear the approaching train
if one was within the range of sight and hearing, which is the
rule laid down in *Clark* v. *Boston & Maine Railroad*, 164 Mass.
434, 439."

The cases relied on by the plaintiff which have been already
referred to are not at variance with this conclusion.  It did not
appear in them that there had been a negligent omission on the
part of the person injured or killed to look for a train at a time
and place when he knew that he could discover by the easy use
of his senses that one was approaching, and when there was
nothing to excuse this omission.

Under the circumstances of this case, Lundergan must bear
the consequences of Rogers's negligence.  He was not a mere
guest of the latter, as in *Shultz* v. *Old Colony Street Railway*,
193 Mass. 309 ; *Miller* v. *Boston & Northern Street Railway*,
197 Mass. 535 ; *Chadbourne* v. *Springfield Street Railway*, 199
Mass. 574; and *Peabody* v. *Haverhill, Georgetown & Danvers*
*Street Railway*, 200 Mass. 277.  The relation of master and ser-
vant existed between these parties, and that is one of the rela-
tions excepted in the Shultz case, at page 315.  And it was made
certain upon the undisputed evidence put in by the plaintiff

that just as Rogers trusted entirely to Lundergan to look out for trains coming from the east, so Lundergan relied wholly on Rogers for protection from any trains that might come from the west. Neither one took nor attempted to take any precaution against the danger for which the other was looking out. Neither one of them, though knowing all the facts, hesitated to trust his safety to such precautions as might be taken by the other. There was on the part of each a voluntary surrender to the other of all care against any danger coming from the side for which the other made himself responsible. That distinguishes this case from *Tennien* v. *Chase*, 201 Mass. 497, and *Feneff* v. *Boston & Maine Railroad*, 196 Mass. 575, 578. This case comes under the rule of *Allyn* v. *Boston & Maine Railroad*, 105 Mass. 77.

It follows that the verdict for the defendant in the first case was rightly ordered.

2. As Lundergan himself was not in the exercise of due care, his father, the plaintiff in the second case, cannot recover for the loss of the son's services. It is not necessary to discuss this proposition or to cite any authorities in its support. Accordingly we need not consider whether upon the averments of the declaration a recovery in any event could have been had in this case.

3. The plaintiff's other exceptions have not been argued, and we treat them as waived. In each case the order must be

*Exceptions overruled.*

*W. Thayer,* (*G. A. Drury & F. A. Walker* with him,) for the plaintiffs.

*R. A. Stewart,* for the defendant.