GRACE H. GOVE, administratrix, *vs.* BOSTON AND MAINE
RAILROAD.

Berkshire.    September 17, 1940. — October 30, 1940.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Negligence,* Motor vehicle, Violation of law, Grade crossing.

A ruling was required that the operator of a motor truck, approaching at
low speed a grade crossing where he had ample opportunity to see an
approaching train which struck him, violated G. L. (Ter. Ed.) c. 90,
§ 15, although required automatic signals were not operating.

TORT.    Writ in the Fourth District Court of Berkshire
dated May 15, 1939.

On removal to the Superior Court, the case was tried
before *Collins,* J.

*W. A. O'Hearn,* for the plaintiff.

*F. P. Garland,* for the defendant.

RONAN, J.    The intestate, at half past seven on a clear
cold morning in January, 1939, was operating a small truck
towing another automobile over a grade crossing on River
Street, a public way in North Adams, when the truck was
struck by a locomotive and the intestate was fatally injured.
The declaration in this action, to recover damages for his
death, contained a count setting forth a cause of action
under G. L. (Ter. Ed.) c. 229, § 3, alleging the negligence
of the defendant, a second count based upon an alleged
failure to give the statutory signals as required by G. L.
(Ter. Ed.) c. 160, § 138, and a third count setting forth a
failure of the defendant to keep in operation at this cross-
ing automatic signals in accordance with an order of the
department of public utilities issued by virtue of G. L.
(Ter. Ed.) c. 160, § 147.    The jury, in answer to certain
questions submitted to them, found that the statutory sig-
nals were given but that the automatic signals were not
operating just prior to the accident and that this contributed
to the accident.    The judge then directed a verdict for the
defendant, subject to the exception of the plaintiff.

The physical characteristics of the locus are set forth in the record and are supplemented in considerable detail by the plan and photographs that were introduced in evidence at the trial and used in the argument in this court. One proceeding southerly along River Street, as the intestate was, would have to travel up a slight incline to reach the crossing, and his view to his left or the east — the direction from which the train approached — was obstructed by three buildings located on the easterly side of the street, one of which had a platform about four feet from the nearest rail of the sidetrack. The highway was crossed by three sets of tracks. The northerly track was a sidetrack. The next track — the one upon which the train involved in the accident was running — was used for westbound trains. The third track was used for eastbound trains. The distance between the rails of each track is four feet eight and one half inches, and the distance between the southerly rail of the sidetrack and the northerly rail of the westbound track is seven feet nine and one half inches. The main tracks are straight for a distance of approximately three quarters of a mile east from the crossing. At a point forty feet northerly of the nearest rail of the westbound track one could see sixty-six feet to the east along this track; at a distance of twenty-five feet from this track one could see six hundred sixty-two feet; and from a point sixteen feet from this track one could see three quarters of a mile or more.

There was evidence that the intestate had stopped his truck near two hydrants where his view to the east was entirely obstructed by the buildings, and that he then proceeded at the rate of four to five miles an hour up the slight incline to the crossing and then stopped upon the crossing "probably a split second" before some part of the locomotive, as it passed, struck the front of the truck. The crossing had been cleared of snow but it was slippery. The truck at the rate it was travelling upon the crossing could have been stopped in six inches or a foot or easily in two feet. The intestate was familiar with the crossing. The train, which consisted of a locomotive and four passenger

coaches, was on time and travelling about thirty to thirty-five miles an hour. The left window of the cab on the truck was down. It is hard to understand why the intestate did not seasonably hear the noise of the train approaching from his left, especially in view of the finding of the jury that the statutory signals had been given. Even if we assume, as the jury found, that the automatic signals were not working, yet the intestate must have realized that a grade crossing is a place of danger and he could not trust his safety entirely to the fact that the signals did not indicate the approach of a train. *Carcione* v. *Boston, Revere Beach & Lynn Railroad,* 278 Mass. 357. *Gilmore* v. *Boston & Maine Railroad,* 299 Mass. 303. Although the distance from the front bumper of the truck to the back of the operator's seat was seven feet six inches, the conclusion is inescapable that, if the intestate had been proceeding cautiously in accordance with the statute, G. L. (Ter. Ed.) c. 90, § 15, he would have availed himself of the ample opportunities afforded to ascertain seasonably the approach of the train and would have averted the collision. That the plaintiff is not entitled to recover is settled by numerous decisions, many of which are collected in *Gilmore* v. *Boston & Maine Railroad,* 299 Mass. 303, and in *Brown* v. *Boston & Maine Railroad,* 302 Mass. 90.

*Exceptions overruled.*