YVONNE D. DOLE, administratrix, *vs.* BOSTON AND MAINE RAILROAD.

PERCY J. DOLE *vs.* SAME.

Essex.      November 8, 1940. — January 3, 1941.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Negligence,* Contributory, Grade crossing.

A finding of contributory negligence of the operator of a motor truck was required by evidence that, before passing over a grade crossing of a railroad, he stopped in a place of safety where he could hear warning signals continuously given by a rapidly approaching train and could see the train several hundred feet away, and then drove slowly upon the crossing and was struck by the train.

TWO ACTIONS OF TORT. Writs in the Superior Court dated December 3, 1937, and January 20, 1938.

The cases were reported to this court by *Baker,* J.

*J. P. Kane,* (*T. J. Lane & M. F. Cronin* with him,) for the plaintiffs.

*F. P. Garland,* for the defendant.

DOLAN, J. These are two actions of tort. In the first action the plaintiff seeks to recover for the death of her intestate. In the second action the plaintiff seeks to recover damages for injury to the motor truck owned by him which was being operated by the intestate at the time of the collision, hereinafter described. The declaration in each case is in two counts, one alleging negligent operation of the defendant's train, the other alleging failure on the part of the defendant to give the signals required by G. L. (Ter. Ed.) c. 160.

The cases were tried to a jury, who specifically found, in response to questions submitted to them by the judge, that the road across the railroad tracks where the accident

occurred was a public way, a "traveled place" within the requirements of G. L. (Ter. Ed.) c. 160, § 138; that the bell on the defendant's engine was rung and the whistle on the engine blown, as required by statute; that the deceased was not guilty of gross negligence; that he did not violate "Chapter 90, Section 15"; that the defendant's agents or servants were negligent; and that the deceased was in the exercise of due care. In each case the jury returned a verdict for the defendant on the statutory count, and for the plaintiff on the count for negligent operation of the train. Under leave reserved the judge allowed the defendant's motion that a verdict be entered for it in each case on the common law count for negligence, and reported the cases for the determination of this court, under a stipulation in each case that, if as matter of law the plaintiff is not entitled to recover, judgment is to be entered for the defendant, "otherwise there is to be a new trial in each case."

The evidence in its aspect most favorable to the plaintiffs tends to show the following facts: The plaintiff in the first case is the administratrix of the estate of her husband, John J. Dole, hereinafter referred to as the deceased. In the afternoon of November 19, 1937, he was driving a tractor-trailer combination truck owned by the plaintiff in the second action.[1] The deceased had delivered a steel tank at a chemical works, located on the Lowell Junction Road about a fourth of a mile from the defendant's railroad crossing in the town of Andover. He was returning by that road shortly after 4 P.M. travelling at a speed of fifteen to twenty miles an hour. It was still daylight and the visibility was good. The deceased's eyesight was good. He approached the railroad crossing involved and stopped the truck five or six feet from the first rail. He then started and proceeded onto the crossing at a speed of about one mile an hour. On the crossing he increased the speed slightly, passed over the inbound or Boston bound track and

---

[1] The plaintiff Percy J. Dole testified that he was the father of the deceased and that the deceased "was working for him" on the day of the accident. The judge instructed the jury, apparently without objection, that "the case of Percy J. Dole stands or falls with the case of" the administratrix because the deceased "was the agent of" Percy J. Dole. — REPORTER.

the intervening space (about eight feet) between that track and the outbound or Portland bound track, and onto the outbound track. At this point the defendant's outbound train struck the truck, killing the deceased and demolishing the truck.

The train involved was made up of a large-type engine and six cars. At the time of the accident it was travelling at a speed of sixty-five to seventy miles an hour. This was its scheduled speed. From a distance of about a quarter of a mile from the crossing the steam whistle on the engine was blowing continuously until after the accident took place. The train was "considerably more than four hundred feet from the crossing" when the deceased was going one or two miles an hour. There were no signs or signals or warnings at the crossing itself except cross arm signs reading "Railroad Crossing, Stop Look and Listen." There was a signal tower located three hundred sixty feet from the crossing. At a point fifteen feet from the crossing the train could be seen when at a distance of five hundred to six hundred feet therefrom, and at a point five or six feet from the first rail of the inbound track (where the deceased stopped before going onto the crossing) it was possible to see down the tracks in the direction from which the train was coming for fifteen hundred to sixteen hundred feet. The defendant's train director in the signal tower saw the truck operated by the deceased as it approached and when it came to a stop at the crossing. There was no signal he could give the engineer to warn him of the approaching truck. He had already given the engineer a clear green signal, which indicated he could resume his regular speed. It was given by the train director when "he got a signal that . . . [the train] was approaching and he then had to put on the green signals." The engineer was on the right side of the cab of the locomotive and did not see the truck until after the collision.

The plaintiffs contend that it could not be ruled that the deceased was guilty of contributory negligence, and that the evidence warranted the submission of the issue of the defendant's negligence to the jury. They concede that the

speed alone of the train may not be evidence of negligence, but argue that it is a matter to be taken into consideration on the question of due care of the defendant in providing proper safeguards at grade crossings; that statutory provisions for devices at such crossings merely prescribe a minimum of care; that, when the crossing is dangerous and prudence demands it, additional safety devices must be provided to the extent necessary to meet the situation; and that the existence of obstructions to view or hearing is a circumstance bearing on the question whether a railroad corporation has performed its full duty as to lights and warnings and signals of approach. In view, however, of what is hereinafter said, we deem it unnecessary to consider the contentions of the plaintiffs that bear upon the issue of negligence on the part of the defendant.

While it is true that in approaching the crossing the view of the deceased in the direction from which the train was coming was somewhat obstructed, yet, in the aspect of the evidence most favorable to the plaintiffs, at one point the deceased could see "down the tracks" for about two thousand feet, at a point fifteen feet from the track he could see down the track a distance in all of five hundred or six hundred feet, and when five or six feet away he could see down the track upon which the train was approaching for fifteen hundred to sixteen hundred feet.

The deceased was in a place of safety when he stopped upon reaching the crossing, and was in a position to hear and see the approaching train if he had used the requisite precaution. *Gilmore* v. *Boston & Maine Railroad*, 299 Mass. 303. If he did look down the track and did not notice the train, he must have looked carelessly, and it is as though he did not look at all. *Collins* v. *Boston Elevated Railway*, 218 Mass. 284. If he did not look when he might have done so, the evidence does not disclose any reasonable excuse for his failure to do so. *Joyce* v. *New York, New Haven & Hartford Railroad*, 301 Mass. 361, 364, 365, and cases cited. *Petrone* v. *New York Central Railroad*, 301 Mass. 352, 355. See also *Gove* v. *Boston & Maine Railroad*, 307 Mass. 84, 86. Nor does it disclose any reasonable excuse for his fail-

ure to heed the statutory signals which were given continuously from the time the train was beyond the signal tower and until the accident occurred. See *Gove* v. *Boston & Maine Railroad*, 307 Mass. 84, 86. "It is well settled that a railroad in the operation of its trains has exclusive use of a grade crossing while they are passing over it; that if the statutory signals are given and a traveller disregards the warning and without sufficient reason insists upon crossing, he does so at his own risk." *Gannett* v. *Boston & Maine Railroad*, 238 Mass. 125, 131, and cases cited. G. L. (Ter. Ed.) c. 90, § 15.

We are of opinion that the evidence required a finding that the deceased was not in the exercise of due care at the time of the accident.

In accordance with the stipulations set forth in the report, judgment is to be entered in each case for the defendant.

*So ordered.*