JOHN PAPAGEORGE *vs.* BOSTON AND MAINE RAILROAD.

Essex.   October 4, 1944. — October 26, 1944.

Present: FIELD, C.J., QUA, DOLAN, & RONAN, JJ.

*Negligence,* Grade crossing, Contributory, Violation of law, Motor vehicle. *Railroad,* Grade crossing.

The indisputable physical aspects attending a collision of a railroad train with a motor truck when the truck was part way across the railroad tracks at a grade crossing required a finding that the train must have been so near the crossing just before the truck started to cross that the operator of the truck knew or should have known of its presence and, by proceeding, violated G. L. (Ter. Ed.) c. 90, § 15, as amended by St. 1933, c. 26, § 1, and was guilty of contributory negligence; and he could not recover at common law from the railroad corporation for injuries sustained in the collision.

TORT.   Writ in the District Court of Southern Essex dated July 7, 1942.

On removal to the Superior Court, the case was tried before *Spalding,* J.

*C. L. Arnold,* for the plaintiff.

*F. P. Garland,* (*R. H. Craighead* with him,) for the defendant.

RONAN, J.   This is an action of tort to recover for personal injuries sustained by the plaintiff on the afternoon of March 8, 1941, when a large truck which he was operating

was struck by a train at a grade crossing on Boston Street, in Lynn. The jury found for the defendant on one count of the declaration which alleged a failure upon the part of the defendant to give the signals required by G. L. (Ter. Ed.) c. 160, § 138 (now amended by St. 1941, c. 273, § 2), and for the plaintiff upon another count which was based upon a common law cause of action for negligence of the defendant. The plaintiff excepted to the entry of a verdict for the defendant under leave reserved.

Boston Street is a public way, forty-two feet wide and practically level. It runs approximately north and south. It is crossed by the two main tracks of the Saugus branch of the defendant. These tracks run in general east and west. The plaintiff was seated in the cab of the truck and was travelling in a southerly direction. The train was proceeding in a westerly direction and approached the crossing from the east or the plaintiff's left. The plaintiff was familiar with this crossing, having passed over it two or three times daily for two years before the accident. He had always noticed that the gates were down whenever a train went over the crossing. He knew that a train was about due at the time of the accident, but he did not know that it was then approaching in the vicinity of the crossing. Although it had snowed all day previous to the accident, there were only two inches of snow upon the ground and the storm "was just starting to let up" at the time of the accident. The gates were up as the plaintiff travelled onto the crossing. He did not know that the defendant had ceased to operate them on account of the storm. There was evidence that the crossing was guarded by a crossing tender who held up a metal disc upon which was the word "Stop." The plaintiff testified that as he approached there was no crossing tender out in the street with any sign. He further testified that he reduced his speed as he came toward the crossing, that he was travelling about five miles an hour when he was five or ten feet from the first rail of the track upon which the train came, and that while his truck was upon this track he observed the train approaching about one hundred fifty feet away at the rate of forty to forty-

five miles an hour.  The locomotive struck the middle of the body of the truck, throwing it fifty feet against a telephone pole.  There were two houses on the easterly side of Boston Street near the crossing, nine feet apart.  The southerly side of the southerly house was fifteen feet and four inches according to the plaintiff's testimony, or eighteen feet according to the defendant's plan, from the nearer rail of the northerly track.  It was undisputed that the only object between this house and the track that would obstruct the view to the east was a gate post of one of the crossing gates.  The plaintiff testified that he looked to the east as the cab passed the second house, and that he could see only fifteen feet beyond the crossing along the northerly track.  The plan showed that as soon as one passed this house he would have a clear and unobstructed view of the tracks to the east for five hundred seventy-eight feet.  The jury took a view, and they were not bound to accept as true anything contained in the plan that differed from what they learned from the view or ascertained from the testimony. The plaintiff was likewise not bound by the measurements disclosed by the plan.  It does seem, however, that there should not be much occasion for a dispute with reference to the relative location of fixed objects which were in existence at the time of the accident and at the time of the trial.  There might well be, however, considerable difference as to the effect such objects might have had in restricting the field of vision and the range of hearing of a person who was travelling over a part of the locus.

The plaintiff was bound by the express command of the statute, G. L. (Ter. Ed.) c. 90, § 15, as amended by St. 1933, c. 26, § 1, to reduce his speed to a proper rate and to proceed cautiously over the crossing.  The purpose of reducing the speed is to afford the operator such control of the vehicle as will enable him to avert any danger that he might encounter on his journey over the crossing.  But the purpose and words of the statute are not complied with by a mere reduction of speed.  There must be caution commensurate with the perils that are universally recognized as lurking in a place where a railroad crosses a public way at grade.

*Gaboriault* v. *New York, New Haven & Hartford Railroad,* 289 Mass. 36. *Klegerman* v. *New York, New Haven & Hartford Railroad,* 290 Mass. 268. *Brown* v. *Boston & Maine Railroad,* 302 Mass. 90. *Anderson* v. *Boston & Maine Railroad,* 302 Mass. 101. *Gove* v. *Boston & Maine Railroad,* 307 Mass. 84.

The facts that the gates were up, that the plaintiff did not know that their operation was temporarily suspended on account of the storm and that he did not see any crossing tender on duty were circumstances, if considered alone, or in the absence of other circumstances pointing in another direction, that might properly be found to justify a belief upon the part of the plaintiff that he might safely undertake to pass over the crossing. But the presence of these factors alone would not justify reliance upon them entirely by the plaintiff nor excuse him from actively exercising his own faculties for his own protection. *Ellis* v. *Boston & Maine Railroad,* 169 Mass. 600, 602. *Slattery* v. *New York, New Haven & Hartford Railroad,* 203 Mass. 453, 456. *Lundergan* v. *New York Central & Hudson River Railroad,* 203 Mass. 460, 463. *Carcione* v. *Boston, Revere Beach & Lynn Railroad,* 278 Mass. 357, 360. *Gilmore* v. *Boston & Maine Railroad,* 299 Mass. 303, 308. *Petrone* v. *New York Central Railroad,* 301 Mass. 352.

There was no traffic moving in the vicinity of the crossing just before the accident except the train and the truck. There is nothing in the record to suggest that the crossing was a noisy place. The plaintiff, according to his own testimony, knew that a train was due, and there was nothing to distract his attention or to prevent him from exercising an appropriate degree of watchfulness as he approached the crossing. If his range of vision of the approaching train was restricted by the storm, then he should have adopted such other reasonable measures as common prudence dictated in order to ascertain if it were safe to cross. *Rogers* v. *Boston & Maine Railroad,* 187 Mass. 217, 219. *O'Meara* v. *Boston & Maine Railroad,* 277 Mass. 315, 319. *Gaboriault* v. *New York, New Haven & Hartford Railroad,* 289 Mass. 36, 42.

The verdict for the defendant upon the first count of the declaration which alleged a failure upon the part of the defendant to give the statutory signals required by G. L. (Ter. Ed.) c. 160, § 138, is not consistent with any contention that can now be made that such signals were not given. *Rohthstein* v. *Boston & Maine Railroad,* 294 Mass. 423, 429. *Germaine* v. *Boston & Albany Railroad,* 298 Mass. 501, 504. *Gilmore* v. *Boston & Maine Railroad,* 299 Mass. 303, 307. The truck, which was twenty-five feet in length, was struck in the middle of the left side while it was crossing the first track. The rear of the truck had not then passed over the first rail, and the front of the truck could have travelled on the crossing for only a very few seconds before the collision. It is obvious that the train must have been so near the truck just before it started to cross the first rail that the plaintiff, if he was proceeding cautiously in accordance with G. L. (Ter. Ed.) c. 90, § 15, as amended, or in the exercise of due care, knew or should have known of the presence of the train. The indisputable physical aspects of this collision preclude any other conclusion. There was no error in ordering the entry of a verdict for the defendant. *Hamblin* v. *New York, New Haven & Hartford Railroad,* 195 Mass. 555, 557. *Gannett* v. *Boston & Maine Railroad,* 238 Mass. 125, 131. *Carcione* v. *Boston, Revere Beach & Lynn Railroad,* 278 Mass. 357. *Gaboriault* v. *New York, New Haven & Hartford Railroad,* 289 Mass. 36. *Brown* v. *Boston & Maine Railroad,* 302 Mass. 90. *Gove* v. *Boston & Maine Railroad,* 307 Mass. 84. *Rice* v. *Boston & Maine Railroad,* 316 Mass. 603.

*Exceptions overruled.*