ARTHUR J. RIVET *vs.* BOSTON AND MAINE RAILROAD.

Middlesex.     May 8, 1946. — June 29, 1946.

Present: FIELD, C.J., LUMMUS, DOLAN, RONAN, & WILKINS, JJ.

*Negligence*, Railroad, Grade crossing, Violation of law. *Railroad*, Grade crossing. *Proximate Cause.*

Evidence warranted a finding that failure to give the signals required by G. L. (Ter. Ed.) c. 160, § 138, as amended, before the starting of a locomotive which had been standing across a sidewalk at a grade crossing with its cowcatcher extending four or five feet into the street was a proximate cause of a collision with an approaching automobile whose operator for some distance had seen the train there discharging passengers and which had "practically stopped" five feet from the nearer rail.

Evidence of the conduct of the operator of an automobile, approaching and "practically stopped" before reaching a grade crossing which the operator had seen was partly occupied by a locomotive attached to a passenger train discharging passengers, and run into when the locomotive was started without a warning signal, did not require a ruling that the operator failed to comply with G. L. (Ter. Ed.) c. 90, § 15, as amended by St. 1933, c. 26, § 1, and so was "acting in violation of the law" within G. L. (Ter. Ed.) c. 160, § 232.

TORT. Writ in the Superior Court dated February 2, 1944.

The case was tried before *Forte*, J.

*J. P. Rooney*, (*L. P. Manning* with him,) for the defendant.

*B. A. Marvin*, (*F. J. Kelley* with him,) for the plaintiff.

WILKINS, J. This is an action of tort for personal injuries received in a collision at a grade crossing on Bedford Street, Lexington, between an automobile operated by the plaintiff and a locomotive, which was drawing a train of passenger cars, operated by the defendant. The case was treated at the trial as an action brought for failure to give the signals required by G. L. (Ter. Ed.) c. 160, § 138, as amended. G. L. (Ter. Ed.) c. 160, § 232. The defendant's motion for a directed verdict was denied subject to its exception. After a verdict for the plaintiff was recorded

under leave reserved, a motion to enter a verdict for the defendant was denied subject to its exception.

We state facts which the jury could have found. On January 24, 1944, between 7:05 and 7:12 P.M. the plaintiff, who was familiar with the locality, was driving his automobile in a southerly direction on Bedford Street, which was twenty-eight feet wide and was crossed by a single track of the defendant at an angle of forty-five degrees toward the direction from which the plaintiff was proceeding. There were no gates or signal lights at the crossing. The weather was clear. The plaintiff's headlights were lighted, and could "pick up" objects about one hundred feet ahead. There was no other moving traffic. An automobile was parked on the plaintiff's left, the rear end of which was twenty or twenty-five feet from the nearer rail, and the lights of which the plaintiff saw. When three hundred feet from the track, the speed of the plaintiff's automobile was about twenty miles an hour. At one hundred feet its speed was about fifteen miles an hour. As he approached and passed the parked automobile, its speed was about ten miles an hour. He kept slowing down, because at about two hundred feet he had seen the locomotive standing at his left across the sidewalk with the cowcatcher four or five feet into the road. He knew that the train was "the 6:25 out of Boston for Bedford." He saw one or two people walking, and he knew that they had come off the train at the North Lexington station, and that when the train had discharged its passengers it would start up and go to Bedford. He was travelling about a foot to the right of the center of the road. When the right front end of the automobile was about five feet from the nearer rail, "he was practically stopped," and "he could have stopped right there." When the front of the locomotive was about four or five feet from the left front corner of the automobile, he heard a sizzling noise, and saw steam coming out from the side of the locomotive. He knew then that the train had started. He put on his brakes, and swung to his right, but the brakes caught too quickly, and he stopped still. A cross beam in back of the cowcatcher

caught the right front corner of the automobile, which was about a foot and a half from the nearer rail. The locomotive moved about thirty feet, and stopped after dragging the automobile toward the side of the street. After the impact the automobile was two to three feet from the locomotive. There had been no warning signal of any kind from the locomotive.

The defendant was required by G. L. (Ter. Ed.) c. 160, § 138, as amended, to have a bell and a whistle on the locomotive; "and such bell shall be rung or at least three separate and distinct blasts of such whistle sounded at the distance of at least eighty rods from the place where the railroad crosses upon the same level any public way . . . and such bell shall be rung or such whistle sounded continuously or alternately until the engine has crossed such way . . . ." The purpose of the signals required by this section is "to warn approaching travellers upon the highway of the danger of attempting to cross until the train has passed." *White* v. *New York, New Haven & Hartford Railroad*, 200 Mass. 441, 444. "The necessary implication . . . is that the whistle must be sounded or the bell rung only when the locomotive itself or cars attached to the locomotive pass the crossing." *Rodriques* v. *New York, New Haven & Hartford Railroad*, 210 Mass. 305, 307. Once the locomotive has passed, the train has the right of way. *Bell Cab Co.* v. *New York, New Haven & Hartford Railroad*, 293 Mass. 334, 337, and cases cited. On the other hand, it has been held that "The fact that the train did not start from a point eighty rods distant from the crossing, did not exempt the defendant from signalling the approach of the train . . . ." *Lenihan* v. *Boston & Maine Railroad*, 260 Mass. 28, 31. *Lincoln* v. *New York, New Haven & Hartford Railroad*, 291 Mass. 116.

The defendant contends that no violation of the statute contributed to the plaintiff's injury. The defendant argues that the statute did not require a continuous sounding of signals when the locomotive was stopped within eighty rods of the crossing or on the crossing itself before passing over; that the statutory duty was limited to the time when the

locomotive was moving toward or over the crossing; and that the plaintiff was so close to the track when the locomotive started to move that failure to resume signals "as the locomotive started up" did not contribute to the plaintiff's injury, since it was then too late for him to avoid being struck. With respect to this contention it is enough to say that the statute contains no such limitation of the statutory duty. The defendant further urges that even if the signals were required to be sounded while the locomotive was stopped at the station, the violation of the statute still did not contribute to the injury to the plaintiff, because he had observed the locomotive at a distance of two hundred feet and could see it at all times thereafter, because he knew that it was the 6:25 train from Boston which, after discharging passengers at the North Lexington station, would continue on its way to Bedford, and because he could see at or near the track persons who had been passengers. From the foregoing the defendant contends that the plaintiff knew the train would start at any moment, and hence that a continuous sounding of signals would have added nothing to his knowledge. See *Daigneau* v. *Worcester Consolidated Street Railway*, 231 Mass. 166, 168. The plaintiff's knowledge, however, was not that the train would start at any moment, but that it would do so only after discharging passengers. The presence of one or two persons is not a conclusive indication that all passengers had been discharged. We think, moreover, that this contention relates rather to the conduct of the plaintiff, and that the jury could have found that in the circumstances the omission to sound the signals did contribute to the plaintiff's injury although he saw the train standing at the station. *Doyle* v. *Boston & Albany Railroad*, 145 Mass. 386. *Walsh* v. *Boston & Maine Railroad*, 171 Mass. 52, 58. *McDonald* v. *New York Central & Hudson River Railroad*, 186 Mass. 474, 478–479. *Engleman* v. *Boston & Maine Railroad*, 210 Mass. 179. *Sluskonis* v. *Boston & Maine Railroad*, 299 Mass. 413, 416, and cases cited.

The defendant also contends that the plaintiff, upon approaching the crossing, did not "reduce the speed of the vehicle to a reasonable and proper rate" and did not "pro-

ceed cautiously over the crossing," as required by G. L. (Ter. Ed.) c. 90, § 15, as amended by St. 1933, c. 26, § 1, and so was "acting in violation of the law" under G. L. (Ter. Ed.) c. 160, § 232. The evidence did not require such a ruling. The plaintiff could rely to some extent on the fact that no signals were sounded. *Copley* v. *New Haven & Northampton Co.* 136 Mass. 6, 9–10. *Duval* v. *Duval*, 307 Mass. 524, 530, and cases cited. Other facts, as already noted, were not tantamount to knowledge that the train would start at any moment. The defendant concedes that the jury could find that the plaintiff was in a position so close to the track when the locomotive started that in spite of every effort on his part he came in contact with it. A ruling was not required that the plaintiff should not have proceeded at all to that position. The present case is governed in principle by *Lincoln* v. *New York, New Haven & Hartford Railroad*, 291 Mass. 116, 119. The circumstance that the train in the *Lincoln* case was headed away from the crossing is not decisive against its pertinence to the case at bar. Cases like *Rice* v. *Boston & Maine Railroad*, 316 Mass. 603, and *Papageorge* v. *Boston & Maine Railroad*, 317 Mass. 235, where the driver of a motor vehicle approached and went upon the crossing in full view of an oncoming train, are distinguishable.

*Exceptions overruled.*