JOSEPH J. VERROCCHI *vs.* BOSTON AND MAINE RAILROAD.

Middlesex. January 7, 1948. — February 4, 1948.

Present: QUA, C.J., LUMMUS, DOLAN, RONAN, & WILLIAMS, JJ.

*Railroad,* Grade crossing. *Negligence,* Violation of law, Grade crossing, Motor vehicle.

The "reasonable and proper rate" to which under G. L. (Ter. Ed.) c. 90, § 15, an operator is required to reduce the speed of an automobile upon approaching a railroad crossing at grade, is a rate which will enable him to stop before he actually reaches the crossing and at a point where he can do so without danger to himself if it then reasonably appears that going forward will be fraught with serious danger. Per RONAN, J.

At the trial of an action resulting from a collision of a railroad train with the plaintiff's automobile at a grade crossing, a ruling was required that the plaintiff had violated G. L. (Ter. Ed.) c. 90, § 15, and could not recover, where the evidence most favorable to the plaintiff showed that he was familiar with the crossing, that, when he reached a point where he first could see the approaching train, the front of his automobile was less than two and a half feet from what would be the overhang of a passing locomotive engine, and that he nevertheless continued at a rate of seven or eight miles per hour.

TORT. Writ in the Superior Court dated July 25, 1945.

The action was tried before *Hanify,* J.

*H. Lawlor,* for the plaintiff.

*J. DeCourcy & P. Brownell,* for the defendant, submitted a brief.

RONAN, J. This is an action of tort to recover for personal injuries and for damage to an automobile resulting from a collision which occurred before noon on a clear and pleasant day in February, 1945, between an automobile operated by the plaintiff and travelling northerly on Bow Street, a public way in Lexington, and a freight train travelling

westerly across this way.   The plaintiff's declaration contained counts based upon failure to give the statutory signals in accordance with G. L. (Ter. Ed.) c. 160, § 232, and also counts at common law based upon negligence in various particulars.   The judge directed verdicts for the defendant on all the counts, and reported the case to this court.

A jury taking the view of the evidence most favorable to the plaintiff could find the facts which are herein stated. The plaintiff, as he was approaching the crossing, stopped his automobile and conversed with a friend for fifteen minutes.   The place where he stopped was in front of a garage and was thirty-five, forty or possibly fifty feet south of the crossing.   The garage and an adjoining shed abutted on the easterly side of Bow Street.   The northwest corner of this shed was twelve feet from the nearer rail of the single track which crossed Bow Street.   The plaintiff, having finished his conversation, started up his automobile in first speed.   He looked both to his right and to his left as he approached the crossing.   The window on the left side of the automobile was open and he listened for a train.   He noticed that the light signals which protected the crossing were not flashing.   He heard no whistle or bell.   He was travelling at seven or eight miles an hour with his foot upon the brake pedal, ready to stop, which he could probably do in a short distance.   When the bumper or front wheels reached the nearer rail, he saw the locomotive twelve or thirty feet away as it came "right out from behind" the shed.   The locomotive struck the center of the right side of the automobile, pushing it about fifty feet to the west and badly smashing it.   The freight train consisted of the locomotive, eight freight cars and a caboose, and was travelling in a westerly direction at fifteen to twenty miles an hour. It was not on any fixed schedule.   The plaintiff was familiar with the crossing and knew from his previous experience that "there were apt to be trains coming along this track." The plaintiff could get a clear view down the track to the east, the direction from which the train came, just as soon as he passed the northwest corner of the shed.   He testified

that as he passed this corner he could see to the east thirty or thirty-five feet. He also testified that it appeared from a photograph which was shown to him that a person at this corner could see three hundred feet to the east of the crossing. The front of the automobile was seven or eight feet in front of where he sat in the operator's seat. The locomotive overhung the track two feet four inches.

The plaintiff in approaching the grade crossing was required to reduce the speed of his automobile to a reasonable and proper rate and to proceed cautiously over the crossing. G. L. (Ter. Ed.) c. 90, § 15. The plaintiff could rely to some extent upon the fact that the crossing signals were not flashing and upon the failure of the engineer to give the statutory signals, but nevertheless he could not cease to take active measures required for his own protection in order to proceed cautiously over the crossing. *Lane* v. *Boston & Maine Railroad,* 288 Mass. 277. *Papageorge* v. *Boston & Maine Railroad,* 317 Mass. 235. *Rivet* v. *Boston & Maine Railroad,* 320 Mass. 41. The observance of definite and specific conduct is commanded by the statute. A reasonable and proper rate of speed means a rate which will enable him to stop before he actually reaches the crossing and at a point where he can do so without danger to himself if it reasonably appears that going forward will be fraught with serious danger. *O'Meara* v. *Boston & Maine Railroad,* 277 Mass. 315. *Carcione* v. *Boston, Revere Beach & Lynn Railroad,* 278 Mass. 357. *Gaboriault* v. *New York, New Haven & Hartford Railroad,* 289 Mass. 36. It is indisputable that the plaintiff could not see for any appreciable distance along the track upon which the train came until he cleared the shed which was only twelve feet from the track, and that as he was passing the corner of the shed the front of his automobile at that instant would be only four or five feet from the track and less than two and one half feet from the overhang of a locomotive if one should pass. The plaintiff according to his own testimony — and there was no other evidence more favorable to him — was proceeding at seven or eight miles an hour or at the rate of ten to twelve feet a second. In other words, the front of the

automobile would reach the path of a locomotive, if one should approach, not more than a fraction of a second after the plaintiff passed the shed.  The speed was unreasonable and improper if he could see several hundred feet down the track as the plan indicates, or three hundred feet as shown by a photograph as he testified, and failed to see the locomotive but continued without any reduction of speed until the collision occurred, or if he could not see the locomotive until it was twelve or thirty feet away and when the front of the automobile was then about on the track. In any event, an attempt to travel over the track of this blind crossing at this rate of speed invited disaster from any train that might be within striking distance.  *Anderson v. Boston & Maine Railroad*, 302 Mass. 101.  *Emery* v. *New York, New Haven & Hartford Railroad*, 302 Mass. 578. *Gove* v. *Boston & Maine Railroad*, 307 Mass. 84.  *Dole* v. *Boston & Maine Railroad*, 308 Mass. 46.  *Rice* v. *Boston & Maine Railroad*, 316 Mass. 603.  *Rivet* v. *Boston & Maine Railroad*, 320 Mass. 41.

*Judgment for the defendant.*