WILLIAM CARROLL *vs.* METROPOLITAN COAL COMPANY.

Suffolk.    March 22, 23, 1905. — September 11, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, HAMMOND,
LORING, & BRALEY, JJ.

*Negligence*, Employer's liability.

An employee of a coal company, when ordered to go down into the hold of a barge
to unload coal, has a right to assume that a vertical iron ladder leading to the
hold, down which other workmen have preceded him, has been kept in proper
condition by his employer, and if he begins to descend the ladder without look-
ing to see whether anything is the matter with it and is thrown into the hold
and injured owing to the giving way of a rung when his hand is upon it, he can
be found to have been in the exercise of due care.

In an action by an employee of a coal company, against his employer, for injuries
from being thrown into the hold of a coal barge by the giving way of a rung
of a vertical iron ladder leading to the hold, while his hand was upon it in
descending the ladder when ordered to go into the hold to assist in unloading
coal, if it appears that the ladder was under the exclusive control of the defend-
ant, that the rungs of the ladder were fitted into holes in the uprights about
three quarters of an inch deep but were not fastened in any other way, that a rung
especially if it was a little short or bent might work sidewise so that it could be
pulled out, that such a defect while not visible to the naked eye could easily
have been detected by an examination but that the defendant caused no inspec-
tion of any kind to be made, and that the rung which gave way was handed
after the accident to the defendant's superintendent but that the defendant
failed to produce it at the trial, the question whether the defect was of such a
nature and had continued so long that the defendant was negligent in the dis-
charge of its duty to the plaintiff is for the jury.

TORT for personal injuries from being thrown into the hold
of the barge Lone Star while she was discharging coal at the
defendant's wharf in Chelsea on the morning of April 28, 1900,
owing to the pulling out of a rung of an iron ladder which the
plaintiff was attempting to descend, with one count at common
law and another under the employers' liability act. Writ dated
July 31, 1900.

At the trial in the Superior Court before *Bell*, J. the plaintiff
elected to go to the jury on the common law count alone. The
plaintiff testified that he had worked for the defendant for ten
or eleven years, and used to work on the wharf, wheel and trim
coal and stand stage ; that the accident happened between half-

past nine and ten in the morning; that he had been working on the wharf that morning helping to coal a towboat; that Robert Wakeham was the boss there for the defendant, and had been since the plaintiff went to work there; that Wakeham told him to get the tubs ready and go down the forward hatch of the Lone Star, a coal barge; that he with four other men got the tubs ready and put them down in the hold; that he went and got a guy to put on them to keep them from striking against the barge as they were hoisted up, and after they were all landed on the deck, he took the guy back to the shanty where he got it and left it there; that when he came back, the men were gone down into the hold ahead of him and he started to go down, and as he was going down a rung of the ladder gave way with his hand, and feeling himself going he jumped and landed on the lower deck of the barge on his two heels and fell right back; that it was the third rung from the top as near as he could tell; that he did not know whether the rung broke or came out; that the ladder was of iron about fifteen inches wide probably; that he fell fifteen or sixteen feet; that he had worked on this barge before, but not in the forward hatch that he remembered.

On cross-examination he testified that he had worked at the same kind of work that he was doing on the Lone Star for twelve or fourteen years altogether; that he had worked on a great many steamers where they had these iron ladders; that most of them had them, and he had worked on at least fifty and probably a hundred; that the ladder was about the same as the others he had worked on; that he understood that the Lone Star belonged to the Boston Tow Boat Company; that he had not been up and down the ladder before on that morning; that he had worked on the wharf that morning for about two hours; that the time of the accident was the first time he started to work on the Lone Star; that after he had worked on the wharf the boss came to him and told him to get the tubs ready to go down the forward hatch, and after they got the tubs down he started to go down on this ladder; that he went down the ladder without looking to see what its condition was at all, and paid absolutely no attention to the ladder, and never looked at it to see if there were any rungs loose or anything the matter with it.

The plaintiff called other witnesses, and various witnesses were called by the defendant. The evidence in regard to the condition of the ladder at the time of the accident is sufficiently described by the court.

At the close of the evidence the defendant requested the judge to rule that upon all the evidence the plaintiff could not recover. The judge refused so to rule, and the jury returned a verdict for the plaintiff in the sum of $2,750. The defendant alleged exceptions.

The case was argued at the bar in March, 1905, before *Knowlton*, C. J., *Morton, Lathrop, Hammond, & Braley*, JJ., and afterwards was submitted on briefs to all the justices.

*J. Lowell & G. M. Sargent*, for the defendant.

*W. C. Cogswell*, for the plaintiff.

HAMMOND, J. It was the duty of the defendant to use due care to see that the ladder was in a safe condition; and, while the plaintiff was not thereby relieved from taking proper care himself, still, in passing upon the degree of care required of him, it must be borne in mind that he had the right to assume that the duty had been performed. The ladder was there for use as a way of getting into the hold, and he saw in the hold men who, as he knew, had passed over it only a few minutes before. He was ordered to join them. Under these circumstances, and without stopping to make any particular examination, he began to descend. Even if the rung was bent, we cannot say that he was not in the exercise of due care. It was a question for the jury.

The question whether there was evidence of negligence of the defendant is more difficult. It is plain that at the time the plaintiff stepped upon the ladder it was in a defective and dangerous condition. It was in a vertical position and was from sixteen to eighteen feet in length. The rungs were fitted into holes in the uprights "about three quarters of an inch" deep, but do not seem to have been fastened to the uprights in any other way. There might therefore have been an opportunity for a rung, especially if it were a little short, to work sideways so that it could be pulled out. Should it come out while a person was using it for support, serious injury might happen to such person. The ladder was under the exclusive control of the defendant, and was unfit for the use for which it was intended. It

does not appear that the defendant took any care of it whatever, except to see that it was there. The defect was not latent. The jury may well have found that while it was not visible to the eye, yet it could easily have been detected by touch, and that that was the only proper way to examine a ladder for such a defect. There was some evidence that the rung was bent, although one witness, called by the defendant, testified that he did not notice any bend in it, and the evidence as to the extent of the bend was very vague. The evidence as to whether the rung was handed to the defendant's superintendent was conflicting, but it warranted a finding that it was handed to him, and the jury properly might have inferred that the defendant could have produced it at the trial and would have done so if its appearance would have helped the defence.

Considering the construction of the ladder, its defective condition, the ease with which the defect could have been detected by a proper examination, the entire lack of any inspection on the part of the defendant, the serious injury likely to happen to a servant through the instability of a rung and the fact that the ladder was under the exclusive control of the defendant, and considering further the evidence as to whether the displacement of the rung was due to its original length or to a shortening by reason of its being bent by contact with a tub or otherwise, taken in connection with the failure of the defendant, in whose possession the jury might have found the rung to be, to produce it at the trial, we are of opinion that the question whether the defect was of such a nature and had continued so long that the defendant was negligent in the discharge of its duty to the plaintiff was for the jury.

The exception taken by the defendant to certain evidence admitted during the cross-examination of the witness Driscoll is not noticed in the brief of the defendant, and in view of its nature we consider it waived.

*Exceptions overruled.*