RALPH PETRONE *vs.* NEW YORK CENTRAL RAILROAD COMPANY.

Worcester.    September 28, 1938. — October 26, 1938.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Negligence*, Contributory, Grade crossing.

Evidence required findings that a pedestrian, although he testified that he looked in both directions before starting to cross railroad tracks at a grade crossing where the gates were not down, was negligent in failing to see a locomotive approaching in plain sight.

TORT. Writ in the Superior Court dated December 12, 1933.

A verdict for the plaintiff in the sum of $1,500 was returned before *Baker*, J. The defendant alleged exceptions.

*J. A. Crotty*, (*R. H. Gregory, Jr.*, with him,) for the defendant.

*Nunziato Fusaro*, for the plaintiff.

RONAN, J. This is an action of tort to recover damages on account of being struck by a locomotive at a grade crossing over a public highway. The declaration contained two counts, the first based on the failure to give the statutory signals, G. L. (Ter. Ed.) c. 160, § 232, and the second setting forth a cause of action at common law. The jury

found for the defendant on the first count and for the plaintiff on the second count. In answer to special questions submitted to them, the jury found that the defendant did not fail to give the statutory signals; that the gates were up when the plaintiff started to go over the crossing; that the plaintiff was not grossly negligent but was in the exercise of due care; and that the defendant was negligent. The case is here upon the defendant's exception to the denial of its motion for a directed verdict upon the second count.

The plaintiff was walking alone in a westerly direction along the southerly sidewalk of Franklin Street in Worcester, at about 6:30 A.M. on August 16, 1933. He was on his way to work. It was a clear, pleasant day. Everything was quiet as he approached the crossing, with which he had been familiar for many years. The crossing was guarded by gates and a gate tender was always on duty. The plaintiff did not see any gate tender on the day of the accident before he was injured. The defendant maintained two tracks across Franklin Street. They ran in a generally northerly and southerly direction. The street is fifty feet wide at the crossing, measured at a right angle, and sixty feet measured along the easterly track. The locomotive was proceeding southerly along the easterly track at the time of the accident. The defendant introduced a plan in evidence from which it appeared that a person, standing in the middle of the southerly sidewalk of Franklin Street and ten feet east of the first rail of this easterly track, could see a locomotive approaching from the north — which was the direction the locomotive came from at the time of the accident — a distance of four hundred fifteen feet; standing on the same sidewalk twenty-five feet from this rail he could see such a locomotive for a distance of three hundred fifty-five feet; and forty-five feet away from this rail he could see an engine coming from the north for a distance of three hundred five feet. There was a filling station upon the land adjoining the northeasterly corner of the crossing, but the building was located back from Franklin Street and to the east of the crossing, leaving a considerable space of

vacant land adjacent to this easterly track. There was testimony that, if there were automobiles parked in this vacant space, one could look over them and see a locomotive as it approached the crossing, and that one would have a totally unobstructed view of the rails themselves for two hundred sixty-two feet north of the southerly sidewalk of Franklin Street.

The locomotive, without any cars attached thereto, started, at a point three hundred seventy-eight feet north of Franklin Street, along a crossover to this easterly track, reaching this track sixty-six feet north of Franklin Street, and proceeded southerly along the easterly track until the accident. It then stopped in one half of its length with its rear half still on the crossing. The testimony relative to its speed varied from four to ten miles an hour.

The plaintiff testified he looked in both directions before he started to cross the tracks. His testimony as to the time and manner in which he looked is confusing and conflicting. It is not necessary to repeat it here. The engine came almost entirely across the street, striking the plaintiff on the right side, above the hip, and threw him down.

He was bound to use his faculties for his own protection in so far as the physical characteristics in the vicinity of the crossing permitted an opportunity to ascertain seasonably the approach of a train and to avoid coming into contact with it. The gates were up. Considered by itself, this indicated that no train was approaching, and might justify one who was not negligently unaware of the actual approach of a train in thinking that it was safe to start to pass over the tracks. But he could not, on account of that fact, abandon all care for his own safety or assume, as he proceeded to pass over the tracks, that he would not encounter any danger. He could not wholly rely upon the performance of their duties by the defendant's agents. He was still under an obligation, notwithstanding the position of the gates, to use common prudence and to exert reasonable efforts to discover everything within range of his sight and hearing which would imperil his safety if he continued his passage across the tracks. It is plain that the engine

was in clear view of the plaintiff before he reached the crossing. A slight glance to his right would have disclosed its presence. The testimony of the plaintiff that he looked in both directions several times before going upon the crossing does not help him. If he did look, then he should have seen the engine. He was alone and there was nothing to distract his attention. He did not see this engine as it came across the street. Although it was quiet in the vicinity he did not hear it. The plaintiff inexcusably failed to see or hear the approaching engine; and, from a place of safety, he stepped in front of it when it was then so near that he had only just reached the first rail when he was struck. Such conduct leads to the irresistible conclusion that his injury was due to his own want of caution. The motion for a directed verdict should have been granted. *Tyler* v. *Old Colony Railroad*, 157 Mass. 336. *Ellis* v. *Boston & Maine Railroad*, 169 Mass. 600. *Raymond* v. *New York, New Haven, & Hartford Railroad*, 182 Mass. 337. *Slattery* v. *New York, New Haven, & Hartford Railroad*, 203 Mass. 453. *Allen* v. *Boston & Maine Railroad*, 245 Mass. 139. *Lenihan* v. *Boston & Maine Railroad*, 260 Mass. 28.

*Exceptions sustained.*
*Judgment for the defendant.*