Anthony Oliver *vs.* New England Steamship Company.

Bristol.   October 25, 1943. — December 1, 1943.

Present: Field, C.J., Donahue, Dolan, Cox, & Ronan, JJ.

*Negligence*, Contributory, Steamship.

Evidence of the circumstances in which a passenger on a steamboat, passing through a door in a darkened corridor, was injured when he stumbled and fell over a waterguard or coaming which was not defective and was painted with black and white stripes to attract attention and with whose existence he was familiar, required a finding that the injury was caused by his own negligence in failing to look for the waterguard rather than by any failure to illuminate the corridor.

Tort.   Writ in the Superior Court dated April 9, 1942. The case was tried before *Warner*, J.

*N. W. Deering*, (*A. W. Blackman & L. H. Gulick* with him,) for the defendant.

*W. B. Perry, Jr.*, for the plaintiff.

DOLAN, J. This is an action of tort to recover compensation for personal injuries sustained by the plaintiff while a passenger on the steamship Nantucket owned and operated by the defendant. At the close of the evidence the defendant moved for a directed verdict in its favor. The motion was denied and the defendant excepted to its denial. The jury returned a verdict for the plaintiff.

The evidence would have warranted the jury in finding the following facts: On September 14, 1941, an organization known as the Manhattan Club had chartered the steamship for a special excursion from New Bedford to Provincetown. The club was using the freight deck of the steamer on the day of the accident as a place of amusement, and had set up devices there for the entertainment of the passengers. Corridors, one on the port side and one on the starboard side, lead to and from the freight deck in the bow of the vessel. There is a doorway to each of these corridors, and at the threshold of each there is a waterguard, sometimes called a coaming, eight inches high on the quarter-deck side and eight and one half inches high on the freight deck side. The waterguards are constructed of steel plate about two inches thick and twenty-nine inches long. They were properly constructed and of a kind ordinarily used on steamers of the type of the one involved. They "were not in any way defective." When the plaintiff boarded the steamer he "got on the quarter-deck." Later he went to the freight deck, proceeding through the passageway on the starboard side. He remained there for a time and, deciding "to go back," entered the corridor on the port side of the steamer, and, stumbling over the waterguard, fell and was injured. He had been on "these" steamers on a "good many" prior occasions, and had been through the passageway in question on several trips when it had been necessary to land passengers from the freight deck. He knew of the existence of the waterguards and their location. On the day of the accident, in going to the

freight deck through the passageway on the starboard side, he went over a threshold identical in type with that over which he stumbled "coming back." He knew the water-guard was exactly the same on each side "with the exception of light." He did not have it in mind when he stumbled. Some electric lights were burning in the passageway but it was dark there, coming from the daylight toward the stern of the steamer. The plaintiff came back without looking and stumbled over the waterguard. If he had been looking for the waterguard he would have seen it. The water-guards or thresholds were "painted black and diagonally striped black and white on each side to attract attention." While the doors leading to the passageways were usually closed and bore the legend "No Admittance," they were opened at times to permit the landing of passengers from the freight deck, and on such occasions guards would be stationed to warn the passengers of the waterguards. At the time of the accident the door to the passageway where the plaintiff fell was open and no guards were stationed at the open doorways.

The denial of the defendant's motion for a directed verdict was erroneous. We are of opinion that upon all the evidence a finding was required that the plaintiff's injury was not due to any failure on the part of the defendant to illuminate the corridor in question sufficiently, as alleged by the plaintiff, but rather was due to his failure to look when, upon his own testimony, if he had looked he would have seen the waterguard, with the existence of which he was familiar. There is no evidence more favorable to the plaintiff in this regard. The defendant was under no duty to warn the plaintiff of the structure with which the plaintiff was familiar and which he could have seen had he looked, but could assume that he would use reasonable care for his own safety. Findings would be required on the evidence that the waterguard was properly incidental to the construction of the steamship and free from defect, that the plaintiff had full knowledge of its existence and location, and that he failed to use reasonable care for his own safety when, had he looked, he could have seen the waterguard;

but that he did not look, and as a result of his own lack of caution fell and was injured. The evidence does not disclose any reasonable excuse for the failure of the plaintiff to look. In this situation it could not have been found properly on the evidence that any failure to illuminate the passageway to a greater extent than it was illuminated was the cause of the plaintiff's injury. Had he looked he could have seen the waterguard. The case is governed in principle by such cases as *Petrone* v. *New York Central Railroad,* 301 Mass. 352, 355, and cases cited, *Joyce* v. *New York, New Haven & Hartford Railroad,* 301 Mass. 361, 364, *Brooks* v. *Sears, Roebuck & Co.* 302 Mass. 184, 187, and *Dole* v. *Boston & Maine Railroad,* 308 Mass. 46, 49. See *West's Case,* 313 Mass. 146, 149.

The defendant's motion for a directed verdict should have been granted.

*Exceptions sustained.*
*Judgment for the defendant.*