## HOOK v. NATIONAL BRICK CO.
### No. 8722.

Circuit Court of Appeals, Seventh Circuit.
June 8, 1945.

Rehearing Denied July 12, 1945.

Wm. Greene, of Chicago, Ill., and Robert H. Moore and Oscar B. Thiel, both of Gary, Ind., for appellant.

Owen W. Crumpacker and Frederick C. Crumpacker, Jr., both of Hammond, Ind., for appellee.

Before MAJOR, KERNER, and MINTON, Circuit Judges.

MAJOR, Circuit Judge.

This appeal is from a judgment, in an action to recover damages for the death of plaintiff's decedent, alleged to have been caused by defendant's negligence. The judgment, favorable to plaintiff, followed a jury trial.

Defendant urges three grounds for reversal: (1) the insufficiency of the evidence to sustain the judgment, raised by the court's refusal to direct a verdict in favor of the defendant, and the court's denial of defendant's motion for judgment non obstante veredicto; (2) the erroneous admission of evidence; and (3) the insufficiency of the allegations of the complaint relative to decedent's earning capacity.

Defendant was engaged in the making, storing and selling of brick for construction and similar uses in and about Lake County, Indiana. Plaintiff's decedent was engaged in the business of buying, selling and hauling brick and other building material. Jurisdiction is based upon diversity of citizenship.

Inasmuch as the primary question for decision arises from defendant's contention that the proof is insufficient to sustain plaintiff's cause of action, we shall relate the evidence in some detail. The defendant offered no testimony. Plaintiff's proof, insofar as it relates to the manner in which plaintiff's decedent met his death, was furnished by three witnesses, Heintz, Kirsch and Bultge, all employees of the defendant at the time of the fatal occurrence.

Late in the forenoon of September 15, 1943, Jacob Hook (plaintiff's decedent) drove his truck to defendant's kiln shed for the purpose of purchasing a load of brick from defendant. Defendant, through its employees Kirsch and Heintz, with the assistance of the decedent, proceeded with the loading operation, during the course of which a box of brick struck plaintiff's decedent in the forehead, causing injuries from which he died a few days later. Decedent left surviving him his widow, Della Hook, 53 years of age, three sons and one daughter. All of the children were of age except one who, together with his mother, was wholly dependent upon the decedent for support.

The loading operation in which the decedent had participated on numerous previous occasions consisted of lifting a box

of brick weighing four tons by means of a crane and cables, and dumping the brick into the truck to be loaded. There were four cables attached to the crane, each ½″ in diameter and made of strands of fine steel wire, with a hook on each cable to be inserted in angle irons near each corner of the box. They were designed to operate so that all four would rise simultaneously, thus raising the box of brick evenly from the floor as it was being moved to dump in the truck. A timber 4 x 4 was placed at right angles across the body of the truck and the loading accomplished in the following manner: the crane lifted the box of brick, carried it over the truck and lowered it onto the timber, about one-fourth of the box being forward of and three-fourths to the rear of the timber. When the box came to rest on this timber, the craneman allowed sufficient slack so the front cables could be unhooked and chains about one and one-half feet in length inserted between the ends of the two forward cables and the angle irons at the front of the box. These chains had a ring at one end into which the hooks of the cables were inserted, and hooks at the other end for insertion in the angle irons on the box. The purpose of this mechanism was to provide sufficient slack in the front cables so that the crane when operated would lift the rear end of the box and at the same time lower the front end, thereby causing the bricks to fall onto the truck. Three men were required to perform the operation, the craneman and a hooker to insert the chains on each side of the forward end of the box.

The operation just described was followed on the occasion of the accident. Decedent located his truck near the crane and a timber was placed across the body of the truck. Heintz, the craneman, caused the box of brick to be picked up, carried over to the truck and lowered upon the timber. Kirsch and the decedent handled the chain or hooking operation, one on each side of the truck. Kirsch was in view of Heintz, the craneman, but neither Kirsch nor Heintz could see the decedent. Kirsch hooked the chain on his side; Heintz waited until the decedent called, "All right, Bill," and then lifted the box about eight inches. Suddenly the box swung toward decedent and knocked him to the ground. The only cable hooked to the box after the accident was the rear cable on Kirsch's side.

The acts of negligence alleged and relied upon are that defendant (1) failed to inspect the cables on the crane, knowing that they had been used beyond their capacity by the North Pier Terminal Company; (2) permitted the cables to become stretched so that the box would not be lifted evenly, thereby causing the box to swerve toward and strike the decedent; and (3) failed to maintain the crane and cables in a condition of repair sufficient to prevent injury to decedent, in view of all the circumstances, including the fact that defendant knew or should have known that the cables would become stretched and the hooks at the end of the cables bent because of the use of the equipment by the North Pier Terminal Company in storing material heavier than the capacity load of the crane and cables.

In view of the importance which plaintiff attaches to the use of defendant's equipment by the North Pier Terminal Company, it seems pertinent to note the facts relative thereto. This company, about nine months prior to the accident, commenced the use of defendant's cranes and equipment for loading and storing merchandise and material in defendant's storeroom. Defendant had three cranes, including the one involved in the instant case, all of which were used at various times by the Terminal Company. The cranes had a lifting capacity of five tons but freight was sometimes handled which weighed seven or eight tons, and on some occasions only two cables of a crane were used. This use of the cables on some occasions caused them to stretch. There was a disagreement between the Terminal Company and defendant as to who should keep in repair the cables and equipment. There was finally an understanding that each company should take care of the cables it broke. It was also shown that the hooks on the cables became bent through use by the Terminal Company. When this happened, they were repaired by defendant.

In connection with the testimony as to the use by the Terminal Company, it is pertinent to note that there is not a scintilla of evidence that any defect in the cables or hooks caused by the Terminal Company's use existed on the occasion of the accident. In fact, there is no evidence that the cables and hooks of the crane used on the occasion of the accident were ever damaged by the Terminal Company's

use. The most that can be said is that all three of the cranes were used at some time by the Terminal Company and that some of the cables and hooks on some of the cranes were damaged. There is no proof as to when the cranes or any of them were last used by the Terminal Company prior to the accident. For all that is disclosed, it might have been a day, a week, or six months. The only testimony as to the condition of the crane, cables or hooks at the time of the accident was that of Heintz, who testified that when he picked up the box of brick the crane was in proper order and the cables and hooks were all right, that they were all in good working condition. There is no proof that the crane, cables or hooks were in a defective condition prior to the accident, and there is no proof that any of the cables or hooks broke during the operation in question, or that the cables stretched, or that either the cables or hooks were in a defective condition immediately after the accident.

There is the statement by Heintz that on one occasion two front cables stretched so that they were four inches longer than the two back cables. It is not shown, however, that these were the cables or the crane in use at the time of the accident; furthermore, the occasion about which he testified was two weeks subsequent to the accident. Defendant's motion to strike this testimony should have been allowed; it neither proved nor tended to prove the negligence relied upon. There is the further testimony of the witness Bultge, admitted over defendant's objection, that about one week after the accident he found three hooks, detached from cables, in a defective condition. The witness had no knowledge whether they had been removed from the cables of the crane involved in the accident or from the cables of the other cranes. This evidence has no probative value and, in our opinion, was erroneously admitted.

We are not unmindful of the rule in Indiana, as elsewhere, that the evidence must be considered in a light most favorable to the plaintiff, together with all inferences which may be reasonably drawn therefrom. Danner v. Marquiss, 218 Ind. 441, 33 N.E.2d 511; Pfisterer v. Key, 218 Ind. 521, 33 N.E.2d 330; Superior Meat Products v. Holloway, 113 Ind.App. 320, 48 N.E.2d 83. According to plaintiff the full benefit of this rule, we think there is an entire want of proof of

any defect in defendant's equipment which caused decedent's injury and death. The mere fact that an accident happened is not proof of a defective condition alleged in the complaint.

There is proof, however, that defendant failed to inspect the cables prior to the accident. Heintz, the same witness who testified that the equipment was all in proper operating condition at the time of the accident, also testified that the cables had not been inspected during the nine months prior thereto. This raises the question whether defendant's failure to inspect the cables constituted negligence which will support the judgment. In considering this question, it must be kept in mind there is no proof as to what caused the box to swerve and strike the decedent. What, if anything, an inspection would have disclosed under such circumstances is purely a matter of conjecture. As pointed out by defendant, it is just as reasonable to infer that an inspection would have revealed the cables in good condition as that it would have revealed a defective condition.

No Indiana case has been cited and we are unable to find one which has announced the rule applicable to such a situation. In Restatement of the Law, Vol. Torts, Chap. 12, Par. 300, it is stated: "A failure to make an inspection does not create liability unless the inspection, if made, would have disclosed the particular defect which makes the use harmful to the other. * * * It is sometimes true that those who use certain instrumentalities are under a duty to make reasonable inspection thereof. The duty of inspection is not, however, ordinarily an independent duty upon which liability is based, but is a duty, the performance of which is a condition precedent to a reasonable use of the instrumentality. The actor's negligence lies in his act of using the defective instrument without adequate inspection, not in his omission to perform his duty of inspection."

In Sack v. Dolese et al., 137 Ill. 129, 27 N.E. 62, the court considered the duty to inspect under circumstances somewhat similar to those of the instant case. There, the plaintiff, working in a stone quarry, attempted to stop a loaded car when the brake gave way and he was thrown to the ground. There was no proof of any defect in the brake or brake chain and no proof as to what had caused the brake to give way. It was contended there, as here, that

defendant's failure to inspect was negligence. In denying recovery on this theory, the court (137 Ill. at page 133, 27 N.E. at page 63) stated: "The proposition goes on an unwarrantable assumption, to-wit, that an inspection would have discovered the defective condition of the brake. That is an affirmative proposition to be shown by the evidence, and the burden of proving it rests on him who asserts it. * * * but before a court or jury can say that their negligence in failing to inspect the car was the cause of plaintiff's injury, it must be shown by the evidence that the fault or defect in the appliance was one which a proper inspection would have made known to them." (A number of cases are cited and analyzed in support of this principle.)

On the basis of similar reasoning, the court in National Builders Bank v. Schuham, 319 Ill.App. 546, 49 N.E.2d 825, denied recovery because of defendant's failure to inspect.

We are of the view that the rule thus stated is controlling in the instant situation. If there had been proof that the accident occurred because of a defective hook or broken or stretched cable, it might well be contended that an inspection would have revealed such condition. Such circumstances would present a jury question as to whether defendant's failure to inspect was the proximate cause of the accident. There being no proof, however, that the accident occurred because of a defective condition of the cables or the hooks, it cannot be inferred that a failure to inspect was negligence which caused the injury complained of.

We therefore conclude that the proof fails to sustain the negligence alleged in the complaint.

The judgment is reversed.

KERNER, Circuit Judge (dissenting).

I agree that, ordinarily, in an action to recover damages for personal injuries, the elements of which negligence consists must be proved by the plaintiff and the burden of proof rests upon him. True, negligence is not to be presumed solely from the fact that some event occurred causing injury. But, if it is shown that the injury complained of resulted from an accident which in itself is indicative of negligence, the happening of the accident, plus the attending circumstances, may be sufficient from which negligence may be inferred.

Here the complaint charged that defendant failed to maintain the crane and cables in a condition of repair sufficient to prevent injury to decedent. There was evidence that no inspection had been made of the cables and hooks for more than nine months prior to the accident; that prior to the accident the Terminal Company had used the crane and cables in question to lift material heavier than five tons causing the cables to stretch; and that Heintz reported that fact to defendant's superintendent, who refused to repair the cables. There was evidence that the crane and cables were under the management of the defendant and there was evidence that the accident was such as does not ordinarily occur except in the absence of due care.

There was no evidence that decedent failed to properly hook the box at his corner or that any omission on his part was the cause of the accident. No one testified that decedent had not fastened the box properly and kept the short chains taut as Heintz raised the box. On the contrary, there was evidence that before the box was raised, the cables and hooks were taut; that Heintz could tell by the feel of his levers that the box had been hooked at all corners; and that it was not until the box had been raised eight inches that the box swerved and struck the deceased. In such a situation, in my opinion, the question of negligence on the part of the defendant was properly submitted to the jury. Baltimore & Ohio Southwestern R. Co. v. Hill, 84 Ind.App. 354, 148 N.E. 489; and Cummings v. National Furnace Co., 60 Wis. 603, 18 N.W. 742, 20 N.W. 665.

I would affirm the judgment.

On Petition for Rehearing.

MAJOR, Circuit Judge.

A reading of plaintiff's petition for rehearing in connection with the proof which it is claimed we ignored does not change our opinion that plaintiff failed to establish the negligence relied upon. The following statement contained in our opinion is particularly criticized: "* * * it is pertinent to note that there is not a scintilla of evidence that any defect in the cables or hooks caused by the Terminal Company's use existed on the occasion of the accident. In fact, there is no evidence that the cables and hooks of the crane

used on the occasion of the accident were ever damaged by the Terminal Company's use." It is asserted in the petition that this statement is directly contrary to plaintiff's evidence, and the testimony of two witnesses, Bultge and Heintz, is quoted in support of the assertion.

The testimony of Bultge is that he admitted testifying before a coroner's jury: "Q. How would you endeavor to explain how it happened? A. Something went wrong with the cables."

How this proves or tends to prove the negligence alleged we are unable to discern. In the first place, it represents nothing more than the expression of an opinion improperly admitted over defendant's objection. In the next place, it throws no light on whether the cables stretched or broke or whether they were improperly attached to the box. This opinionated statement, in our view, does not constitute any proof of the negligence relied upon.

The testimony of the witness Heintz which plaintiff calls to our attention follows:

"Q. Do you know whether or not they were using the crane in question to lift material, that is, as a matter of practice, which was heavier than five tons? A. Sure.

"Q. Do you know the weight of the material that they were lifting? A. Well, I seen them lifting eight tons.

"Q. In other words, as I understand it, I believe you said the capacity of the cable was five tons, is that right? A. Yes."

It is to be noted in connection with this testimony that it was not shown when the crane in question was used with reference to the time of the accident. It could have been the day before or six months before for aught that is shown. Furthermore, the fact that the crane was at some time used in lifting material heavier than its capacity is not proof that the cable or hooks were in a defective condition at the time of the accident.

Our opinion is also criticized for failure to discuss and apply the rule of res ipsa loquitur. The fact is that we considered this rule and thought it so plainly inapplicable as to require no discussion. Perhaps we were lulled into this belief by reason of the fact that plaintiff's able counsel did not mention or rely upon it in his original brief. It was only after an inquiry by a member of this court during oral argument that plaintiff's counsel made any claim that the rule was applicable. Plaintiff now relies upon Talge Mahogany Co. v. Hockett, 55 Ind.App. 303, 103 N.E. 815, and Eker v. Pettibone, 7 Cir., 110 F. 2d 451, as authority for her contention that the rule should be applied. In the Hockett case the Indiana court in defining the rule includes the following element [55 Ind.App. 303, 103 N.E. 816] : " * * and it is made to appear that all the instrumentalities causing the accident are under the exclusive control and management of the defendant * * *." The rule which we announced in the Eker case is to the same effect. See also Indiana Harbor Belt R. Co. v. Jones, 220 Ind. 139, 41 N.E.2d 361 ; City of Decatur v. Eady, 186 Ind. 205, 115 N.E. 577, L.R.A.1917E, 242 ; Prest-O-Lite Co. v. Skeel, 182 Ind. 593, 106 N.E. 365, Ann.Cas.1917A, 474 ; Baltimore & Ohio Southwestern R. Co. v. Hill, 84 Ind.App. 354, 148 N.E. 489.

The facts related in the opinion demonstrate beyond any doubt that the cables and hooks were not at the time of the accident under the exclusive control and management of the defendant. In fact, plaintiff's decedent performed a substantial part in their control and management. Perhaps the most important part of the operation was the fastening of the cable hooks to the box and the decedent was directly charged with this responsibility as to the cables on his side of the box. Such being the situation, plaintiff is not entitled to the benefit of the res doctrine.

The petition for rehearing is denied.