THOMAS DARCEY *vs.* LORD & BURNHAM CO.

Middlesex.     October 9, 1946. — November 4, 1946.

Present: FIELD, C.J., DOLAN, RONAN, WILKINS, & SPALDING, JJ.

*Negligence*, Contributory, Greenhouse.

A conclusion that a plaintiff was guilty of contributory negligence was
required as matter of law as the only rational conclusion from his
testimony that he, the foreman of a florist operating a greenhouse,
entered the greenhouse alone in the daytime through a door whence
was plainly visible to him an uncovered and unguarded hole in one of
the greenhouse walks, which he knew was in that condition when he
was last there the day before; and that after walking backwards along
several walks while watering plants, he came to the hole, fell back-
wards into it, and was injured.

TORT.    Writ in the First District Court of Southern
Middlesex dated May 4, 1943.

Upon removal to the Superior Court, the action was tried
before *Dillon*, J.

*D. H. Fulton*, for the defendant.

*T. L. Thistle*, for the plaintiff.

WILKINS, J.    This is an action of tort to recover for
injuries sustained by falling into an allegedly negligently
unguarded hole in a greenhouse belonging to the plaintiff's
employer where the defendant, a contractor, was engaged
in construction work.    The jury returned a verdict for the
plaintiff.    The only question relates to the denial of the
defendant's motion for a directed verdict.

We summarize the evidence most favorable to the plain-
tiff as well as we can from a record which in some respects
is obscure and ambiguous.    The plaintiff was foreman for the
Butterworth company, florists, with greenhouses in Fram-
ingham.    He had been in its employ for many years, was
next in rank to Butterworth, and was the active man doing
the mechanical and physical work around the greenhouses

and in charge of the other help. In June, 1940, the defend-
ant began the simultaneous construction of three connected
greenhouse units for the Butterworth company. The units
were known as unit number 1, unit number 2, and unit
number 3. The plaintiff was injured in unit number 1 on
Sunday, September 15, 1940. Unit number 1 was one hun-
dred thirty feet long and thirty feet wide, and contained five
rows of benches and five walks each two feet wide. The
benches and walks were more than one hundred feet long.
During the construction a continuous trench (which appears
to have been in the nature of a conduit for the main hot
water pipe for heating and other pipes) was laid through the
three units. The trench, two feet wide and three feet deep,
seems to have crossed unit number 1 at its width. It had
cement sides and removable rectangular cement covers or
slabs, each measuring about three feet by two feet. There
was thus afforded, when the covers were in place, a smooth-
surfaced walk or aisle running the width of unit number 1
and then through the other two units. The last work per-
formed by the defendant in unit number 1 before the events
hereinafter referred to was on August 28, and at that time
the trench was completed and there were benches in unit
number 1. On Friday, September 13, the plaintiff and two
other employees of the Butterworth company started to fill
unit number 1 with plants. About 10 A.M. the plaintiff
saw one Elder, an employee of the defendant, nail a board
across the doorway between units number 1 and number 2
"to stop anybody from falling in there." Elder then re-
moved the cover nearest that doorway in unit number 1,
"got down into the hole and did some work." That work
was "something in the way of changing or adding to pipes."
At noon when Elder quit work, the plaintiff observed that
Elder did not replace the cover, but, "to protect the hole,"
nailed another board from one bench to another across the
aisle in unit number 1 on the side of the hole away from
the doorway. From a photograph in evidence this would
appear to have been at a distance of four covers (eight to
twelve feet) from the hole. The plaintiff testified that
about 1 P.M. Elder took down the board last referred to and

worked in the hole until 4 P.M., and that Elder then put back that board, but left the cover off. The plaintiff and the two men worked until 6 P.M. when the plaintiff, who with Butterworth was the only person to have a key, locked "the outside door." On Saturday morning the plaintiff and the two men resumed transferring plants in unit number 1. The plaintiff testified that Elder, who arrived later, "took off that rail and went to work again." At noon when Elder quit work for the day the plaintiff observed that he did not put up "the board," and that "the slab was off." On Saturday afternoon the plaintiff did not work in unit number 1, but the two men did until 6 P.M. At that hour the plaintiff locked the door and went home. On the morning of Sunday, September 15, between 10 A.M. and 10:30 A.M. the plaintiff, who had previously opened "the outside door," entered unit number 1, where no one was working at the time. The plaintiff began to water plants. It was his habit to water plants "while backing up." In this way the plants can be seen better. Each walk had two water connections and two lines of hose. Each length of hose permitted watering plants half the distance on each side of each walk. When the plaintiff finished watering the plants in the first walk, which was nearest "the outside door," he did the same in the second walk "and so on," gradually approaching the doorway leading from unit number 1 to unit number 2. "The plaintiff watered down the third walk and, when he reached the trench, he backed around on the walk to water to his left. He was backing toward the door leading to unit number 2 watering the plants on the bench to his left." While so doing he fell into the hole from which the cover had been removed, and was hurt. The removed cover was leaning against a bench at the side of the trench.

We do not find it necessary to analyze with niceness the nature of the duty owed to the plaintiff by the defendant, as we are of opinion that as matter of law the plaintiff cannot recover because of his own negligence which contributed to his injuries. "Where from the facts which are . . . indisputable, or shown by evidence by which the plaintiff is bound, only one rational inference can be

drawn and that an inference of contributory negligence or want of due care, then the question of due care or contributory negligence is one of law for the court and a verdict for the defendant should be directed." *Duggan* v. *Bay State Street Railway*, 230 Mass. 370, 379. *Duff* v. *Webster*, 315 Mass. 102, 103. In the case at bar the plaintiff, in the course of his duties as foreman, opened and later entered a glass building, which at the time was exclusively in his own control and in which he was not a stranger.. It was the middle of a Sunday morning in late summer. There was no evidence of unusual darkness, while photographs in evidence indicate that the building had an interior with the high quality of light which in common experience is to be found in greenhouses. The plaintiff was there long enough to water all the plants on both sides of two walks, each at least one hundred feet long, and part of the plants in a third walk. He knew that two days earlier an employee of the defendant had removed the cover nearest to the door leading to unit number 2 and had been working in the trench. See *Forgione* v. *Frankini Construction Co.* 308 Mass. 29, 31. While the plaintiff knew that on two occasions, namely, during the noon hour and at the close of work on Friday, there had been a barrier across the trench at a distance of eight to twelve feet from the hole, he also knew that when he had last seen the place on Saturday noon, after the defendant's employee had last worked in the trench, there was no such barrier. Moreover, there was at all times after the commencement of work Friday down to and including the moment of his fall another barrier across the doorway on the farther side of the hole. Nevertheless the plaintiff proceeded to walk backwards into the hole, which measured at the top approximately two by three feet, and which could not have failed to be entirely obvious to a person of ordinary intelligence. It must have been plainly visible to the plaintiff when he entered unit number 1 preparatory to watering the plants at a time when he undoubtedly was walking forward in a normal manner. "He was bound to use his faculties for his own protection." *Petrone* v. *New York Central Rail-*

*road,* 301 Mass. 352, 354. There was but one rational inference to be drawn from the facts: the plaintiff did not exercise on his own behalf the requisite degree of care. This case falls within the authority of such decisions as *Pigeon* v. *Massachusetts Northeastern Street Railway,* 230 Mass. 392, 396, *Benton* v. *Watson,* 231 Mass. 582, *Doyle* v. *Boston Elevated Railway,* 248 Mass. 89, *Rooney* v. *Merliss,* 258 Mass. 407, *Joyce* v. *New York, New Haven & Hartford Railroad,* 301 Mass. 361, *Botelho* v. *Margarida,* 312 Mass. 429, and *Oliver* v. *New England Steamship Co.* 315 Mass. 151. See *Lorenzo* v. *Wirth,* 170 Mass. 596; *Humphreys* v. *Portsmouth Trust & Guarantee Co.* 184 Mass. 422, 424; *Palmer* v. *Boston Penny Savings Bank,* 301 Mass. 540, 544. In *Judson* v. *American Railway Express Co.* 242 Mass. 269, 271, the plaintiff, who was not an employee on the premises, slipped on a foreign substance in a poor light. That case has little resemblance to the facts in the present case. In *Runnells* v. *Cassidy,* 307 Mass. 128, which was another case in which the facts were quite unlike those now before us, there was, among other things, a finding by the auditor that the plaintiff was in the exercise of due care. Many decisions relied upon by the plaintiff which have to do with the lack of the requisite degree of care by the defendant are distinguishable.

> *Exceptions sustained.*
> *Judgment for the defendant.*