David GOBERN et al., Plaintiffs,
Appellees,

v.

METALS & CONTROLS, INC., Defendant-Third Party Plaintiff, Appellant,

v.

WALCO ELECTRIC CO., Third-Party
Defendant, Appellee.

No. 7303.

United States Court of Appeals
First Circuit.

Nov. 18, 1969.

Thomas D. Burns, with whom Stephen N. Subrin, George M. Ford, Boston, Mass., Alex B. Burke and Burns & Levinson, Boston, Mass., were on brief, for appellant.

Milton Stanzler, Providence, R. I., with whom Richard A. Skolnik and Abedon, Michaelson, Stanzler & Biener, Providence, R. I., were on brief, for David Gobern, appellee.

Thomas B. Arnold, Boston Mass., with whom Epstein, Salloway & Kaplan and Goodspeed & Stramondo, Boston, Mass., were on brief, for Walco Electric Co., appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

Plaintiff Gobern, an employee of Walco Electric Co., was seriously injured when he fell from a staging while doing electrical work at the Metals & Controls, Inc., plant in Attleboro, Massachusetts. He brought this diversity suit against Metals alleging, *inter alia*, that it had negligently provided him with a dangerous and defective staging and that this was the cause of his accident. Metals impleaded Walco as a third party defendant under a contract of indemnity.[1] The jury found in favor of the plaintiff[2] in the principal action and found for Metals in its action over against Walco.[3] Judgment was entered accordingly. Thereafter, on motion of Walco, the court ordered the entry of an amended judgment affirming the previous judgment for the plaintiff

1. The agreement between Walco and Metals provides in pertinent part as follows: "FOR WORK ON PURCHASER'S OR ITS CUSTOMER'S PREMISES. If Seller's [Walco] work under the order involves operations by Seller on the premises of Purchaser [Metals] * * *, Seller *shall take all necessary precautions to prevent the occurrence of any injury to person or property during the progress of such work and except to the extent that any such injury is due solely and directly to Purchaser's * * * negligence, * * * shall indemnify Purchaser against all loss which may result in any way from any act or omission of the Seller, its agents, employees, or subcontractors, * * *.*"* (Italics ours.)

2. After the complaint was filed The Home Indemnity Co., the Workmen's Compensation carrier for Walco, was added as a party plaintiff.

3. By agreement of the parties the following special questions were submitted to and answered by the jury:

"1. Was Mr. Gobern negligent in any respect? No
2. Did his own negligence contribute to the happening of the accident? No

If your answer is Yes to both of the above questions do not answer the following questions.

3. Was Metals & Control, Inc. or any of its employees negligent? Yes
4. If your answer to Question 3 is Yes, did that negligence contribute to the happening of the accident? Yes

If your answer to either Question 3 or Question 4 is No, do not answer Question 5.

5. Please state, in dollars, the total amount you find to be Mr. Gobern's damages. $100,000.00."

In the third party action the trial court submitted the following question to the jury: "Was the injury due solely and directly to the negligence of the employees of Metals and Controls?" The jury answered "No."

against Metals, but setting aside that part of the judgment in favor of Metals against Walco and ordering judgment for Walco. From this amended judgment Metals appeals.

It contends, *inter alia*, that in the principal action the trial court erred in not directing a verdict in its favor on the grounds that there was no evidence it was negligent; that Gobern was contributorially negligent as a matter of law; and that he assumed the risk as a matter of law.

Metals' principal contention in the third party suit is that the trial court erred in setting aside the judgment in its favor and ordering judgment for Walco because there was abundant evidence to warrant the jury's finding that Gobern's injury was not due solely and directly to Metals' negligence.

The circumstances surrounding the accident are as follows. Gobern had been doing electrical work for Walco at the Metals plant for over a year. When he arrived for work on the morning of the accident he was told to replace another Walco employee who was using the staging in question to remove light fixtures from the ceiling in one of Metals' buildings. This staging, which Metals had purchased from Gilmore-Kramer Company of Providence, was used by the Metals and the Walco employees in connection with their work at the plant. It could be raised to a height of some twenty feet. The working area at the top consisted of a wooden platform approximately five by three feet. As delivered from the factory, the work platform was enclosed by collapsible horizontal railings, or safety bars, about three feet high and made of tubular steel piping. The railings were held together by vertical corner poles and smooth surfaced, unthreaded steel pins. These pins were a quarter inch in diameter and about two inches in length, the inner diameter of the ring being half an inch. They were attached to the staging by a chain.

Gobern ascended the staging immediately after his fellow employee had come down. He checked the staging to see if the railings were in place and then climbed down again and positioned it on the floor. Gobern testified that when he reascended the staging he made a visual inspection of the platform and railings, shaking the latter "to see if they were still intact." He also testified that there were two quarter twenty bolts on one side of the staging and that the platform seemed to be solid and secure, as it always had been.

Gobern was attempting to loosen a light fixture when he fell. He was crouched down on the platform with the upper half of his body extended beyond the edge, holding onto the railing with one hand and attempting to remove a grid with the other. He heard a snap and lost his balance. The railing was in his hand as he fell. Then he heard a second snap. The parties agree that the accident occurred when one of the bolts holding the horizontal railings together sheared, thereby releasing the railing. It is also agreed that the bolt which snapped and precipitated Gobern's fall was a threaded aluminum quarter twenty bolt rather than a steel pin of the kind and dimensions that came with the staging when it was delivered from the factory.

It is well settled that when one invites the employee of an independent contractor to perform work on his premises he owes him the same duty of care that he owes to his own employees, Burr v. Massachusetts Electric Co., 1969 Mass.Adv.Sheets 935, 938, 248 N.E.2d 492, 495 (1969); Williams v. United Men's Shop, Inc., 317 Mass. 319, 320, 58 N.E.2d 2, 3 (1944), viz., to disclose to the employee hidden defects of which the employer knows or, in the exercise of reasonable care, should know. Gallo v. Leahy, 297 Mass. 265, 268, 8 N.E.2d 782, 784 (1937). There is no duty to warn of dangers that are obvious or could be discovered by reasonable inspection by the employee. Hannon v. Hayes-Bickford Lunch System, Inc., 336 Mass. 268, 272–273, 145 N.E.2d 191, 193 (1957); Darcy v. Lord & Burnham Co., 320 Mass. 371, 374–375, 69 N.E.2d 449, 451 (1946).

In contesting the jury's findings of negligence, Metals relies on the testimony of Stanley Gilmore, president of the company from which the staging was bought. After qualifying as an expert, he testified that a threaded screw should not be used to join the railings if a smooth surface pin of proper diameter was available. This is because "sometimes in the threading process, you might get internal frictions in the middle, not readily observed from the exterior." Metals argues that since the defect would not be obvious, this brings the case within the protective mantle of the "hidden defect" rule. The evidence does not disclose, however, whether the defect was in the manufacture or whether the threaded quarter twenty bolt was simply too weak to support plaintiff's weight against the horizontal bar. Whatever the defect we think it immaterial. Gobern claims that the weakness could have been discovered by a reasonable inspection. We agree.

Metals' maintenance foreman testified that there was no regular system of inspection; that although there were visual inspections by Metals personnel for missing or loose bolts, the bolts were not tested for firmness; and that no records were kept to determine whether inspections were made. He further testified that he felt "any long device on a chain" would serve as a pin. In fact, there was evidence that from time to time a number of things were used, including a quarter twenty bolt, a twisted welding bar, cotter pins and spring type clips.

This testimony raised the question whether Metals' failure to inspect the screws was such negligence as would support the judgment. Hook v. National Brick Co., 150 F.2d 184, 187 (7th Cir. 1945).[4] Obviously, a visual inspection would have revealed nothing. But it has long been recognized that the exercise of reasonable care in an inspection depends upon the nature of the apparatus and the use to which it is subjected. See White v. Newborg, 208 Mass. 279, 281, 94 N.E. 269, 270–271 (1911); Carroll v. Metropolitan Coal Co., 189 Mass. 159, 162, 75 N.E. 84, 85 (1905); Finnegan v. Samuel Winslow Skate Manufacturing Co., 189 Mass. 580, 582, 76 N.E. 192, 193 (1905). We think a jury could reasonably find that where, as here, the owner of a scaffold replaces vital parts with makeshift devices, it is incumbent upon him to test it, at least against the weight of a user of the scaffold. Whether the defect could have been discovered and remedied upon a reasonable inspection, and whether Metals' failure to so inspect was the proximate cause of the accident were issues of fact properly submitted to the jury.[5]

Metals' contention that the court erred in failing to rule that Gobern was guilty of contributory negligence as a matter of law is based on the rule that if equipment is obviously unsafe, and is within plaintiff's knowledge or discoverable by reasonable inspection, he cannot

---

4. See Restatement (Second) Torts § 300, com. c (1965): "A failure to make an inspection does not create liability unless the inspection, if made, would have disclosed the particular defect which makes the use harmful to the other. * * * It is sometimes true that those who use certain instrumentalities are under a duty to make reasonable inspection of them. The duty of inspection is not, however, ordinarily an independent duty upon which liability is based, but is a duty, the performance of which is a condition precedent to a reasonable use of the instrumentality. The actor's negligence lies in his act of using the defective instrument without adequate inspection, not in his omission to perform his duty of inspection."

5. Metals argues that there was no testimony or permissible inference that a screw bolt was unsuitable or improper for the purpose of holding the railings together. But it is plain that Metals misconceives the purpose served by the pins. Their purpose was not to hold two sticks together, but rather to protect the employee on the scaffold. If the purpose was only to hold up the railing this could have been accomplished by a wooden dowel.

recover. Darcy v. Lord & Burnham Co., *supra* at 374–375, 69 N.E.2d at 451. But this is not a case where Gobern's duty to inspect is measured by the same standard as the duty of Metals. In Levesque v. Charlton Mills, 222 Mass. 305, 308, 110 N.E. 307, 308 (1915), it was held that while a servant must use due care for his own safety, in passing on the degree of care required of him, he has a right to assume that the master will perform his duty of inspection. Here there was a hidden danger and the defendant was in a superior position to know of its existence. Lajeunesse v. Tichon's Fish & Fillet Corp., 328 Mass. 528, 105 N.E.2d 245 (1952); *see* Independent Nail and Packing Co. v. Mitchell, 343 F.2d 819, 823 (1st Cir. 1965) (concurrence).

The testimony Metals relied on to establish contributory negligence is as follows. Gobern teestified that he had used similar stagings fifty times; that he had used this particular one five or six times; that he knew that the diagonal sway bars were not in place and that the staging is less stable without them;[6] that a screw was being used instead of a pin; that he was satisfied to use it in that condition; that he knew there was something "very different" about the staging; that he was content to hold onto the security bar anchored in at least one place by something he hadn't seen before; that he didn't know whether a screw was proper or not and that he did "care" whether it was the proper thing or not. There was also an alleged admission to the effect that he knew the staging was unsafe when he ascended it.[7]

Since it is agreed that the specific defect was the shear strength of the screw, the fact that Gobern may have ventured onto the staging while the sway bars were not in place is immaterial. Nor do the facts that he was aware there was something "different" about the staging and that he "cared" whether the screw was the proper thing require a finding of contributory negligence. It is settled that "[m]ere knowledge that some danger exists is not conclusive of the negligence of one who fails to avoid it." Sullivan v. Hamacher, 339 Mass. 190, 194, 158 N.E.2d 301, 303 (1959). Moreover, Gobern testified that when he ascended the staging he visually inspected it and shook the railings. We cannot say as a matter of law that a reasonable man must do more under the circumstances. Hercules Powder Co. v. Costa, 289 F.2d 571 (1st Cir. 1961).

Metals' contention that the court failed to instruct the jury adequately on contributory negligence is without foundation. We think the court's instruction was sufficient.[8]

6. There was evidence that after purchasing the staging, Metals attached two diagonal bars (sway bars), which extended from the horizontal railings to the floor of the platform. The purpose was to steady the platform, which had a tendency to sway about two inches.

7. Metals relies on a question put to Gobern during cross-examination which was based on his previous answers to an interrogatory. In the interrogatory, Gobern had been asked to set forth the acts and omissions alleged to be the cause of his injury. His answer to that question, which Metals' counsel read in court, was: " 'Failed to provide me with a safe staging; provided me with a staging that was not fit for the purpose intended; used a screw to hold the security bar in place instead of a pin as intended; failed to inspect said staging to discover said condition and its dangers; failed to warn me of said condition; provided a staging with missing sway bars.' "

The following then occurred: "That was your answer, wasn't it? A. That is right. Q. You knew every bit of that when you went up there, didn't you? A. That is correct. Q. There is no question about that, is there? Is there? A. In that sense, no."

Since this was a specification containing legal conclusions it is impossible that he "knew every bit" of it when he ascended the scaffold. Even if he did ascend the scaffold with prescience, none of the specifications indicate that he knew the screw was too weak to support his weight against the safety bars.

8. The court's instruction was as follows: "In this case there is a claim by the defendant that Gobern has been contributorily (sic)· negligent. That is a claim by the defendant that Gobern failed to

■■■■ Metals complains that the court erred in failing to instruct the jury on assumption of the risk [9] and, alternatively, that Gobern voluntarily assumed the risk as a matter of law. However, we hold, as a matter of law, that Gobern did not assume the risk. Metals contends that Gobern's action in inspecting and shaking the bars showed that he appreciated the risk. But Metals mistakes the thrust of the defense of assumption of risk.

"An employee does not voluntarily assume the risk of injury unless the employer upon whom the burden rests proves that the cause of the injury was so open and obvious that it was known to the employee and that the nature and character of the risk were such that the employee must have fully appreciated the danger that might arise therefrom." Ryan v. Gray, 316 Mass. 259, 261, 55 N.E.2d 700, 701 (1944).

This is precisely what is absent here. Metals has not proved that Gobern assumed the risk of the "cause of the injury", namely, the negligence of Metals in failing to test the shearing strength of the screw. The condition of the staging in general is of no consequence. "The fact that the plaintiff is fully aware of one risk, as for example that of the speed at which a car is being driven, does not mean that he assumes another of which he is unaware, such as the failure of the driver to watch the road." W. Prosser, Torts, § 67, at 464 (3d ed. 1964); O'Toole v. Pruyn, 201 Mass. 126, 87 N.E. 608 (1909).

In Hietala v. Boston & Albany R.R., 295 Mass. 186, 3 N.E.2d 377 (1936), although plaintiff was walking on the railroad tracks when he was struck by a train, the evidence showed that no warning had been given. The court held that the workman did not assume the risk that the engineer "would be negligent in this respect." The court said, "Neither did the plaintiff voluntarily assume the risk of negligence the existence and danger of which he could not know or appreciate until the moment of his injury." Hietala, supra at 194, 3 N.E.2d at 382; see Reidy v. Crompton & Knowles Loom Works, 318 Mass. 135, 139–140, 60 N.E. 2d 589, 592 (1945); O'Toole v. Pruyn, supra; Miner v. Connecticut River R.R., 153 Mass. 398, 26 N.E. 994 (1891). We think these principles control here.

■■■■ Lastly, we consider Metals' claim that the court erred in setting aside the jury verdict and in ordering judgment for Walco. Unquestionably Walco owed its employees the duty to provide a reasonably safe place to work even though the work was not being done on its own premises. Cronan v. Armitage, 285 Mass. 520, 525, 190 N.E. 12, 14 (1934). The indemnity agreement so provided. We think Walco's duty was of the same magnitude as that of Metals, in view of the fact that Walco had been doing work on Metals' premises for a year, and had a foreman and job supervisor, as well as other employees, on the site. The jury could find, in these circumstances, that Walco had reason to know that over a period of time Metals had substituted the steel pins with several inferior devices. Only if Walco believed that Metals had tested the substitutions, should its duty be reduced. The

---

use ordinary care for his own safety and a further claim that his own failure to use ordinary care contributed to the happening of the accident.

"The burden of establishing contributory negligence is on the defendant.

"By the way the questions are set up, if you find he was negligent, that would appear in your answer to Questions 1, and 2, you are not to give any further consideration to the issue of contributory negligence."

9. No instruction was requested on assumption of the risk. After the jury was charged, counsel for Metals pointed out that assumption of risk had been pleaded in its answer and stated that he thought he was entitled to such an instruction. The court refused to recharge, on the ground that the request had not been timely made. Because of our disposition of this case, we need not decide whether the court erred under Turner Constr. Co. v. Houlihan, 240 F.2d 435 (1st Cir. 1957), and whether objection was timely taken. Fed.R.Civ.P. 51.

record shows, of course, that Metals had failed in this duty and conducted only haphazard and, at any rate, inadequate inspections. In our opinion the jury could reasonably find that Walco was aware, or at least had reason to know, that Metals had not been making proper tests. For this reason, we think the district court erred in setting aside the jury's verdict against Walco. We also think that the jury's finding against Walco on this point does not require the same finding with respect to Gobern, particularly where he has the right to assume that his master will perform his duty of inspection. Levesque v. Charlton Mills, supra.

The amended judgment of the district court is affirmed as to recovery by Gobern and The Home Indemnity Co. and that portion of the amended judgment having to do with liability over is vacated and the cause is remanded for further proceedings consistent with this opinion.